## CANTON-HUGHES PUMP CO. v. LLERA.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1913. On Petition for Rehearing, June 30, 1913.)

No. 2,313.

1. COURTS (§ 189*)—MUNICIPAL COURTS—SPLITTING CAUSES OF ACTION.

The rule prohibiting the splitting of causes of action, whereby a judgment taken for a part of one indivisible demand bars an action on the remainder, does not apply where a claim in excess of the court's jurisdiction has been filed as a counterclaim, under Municipal Court Act (Laws N. Y. 1902, c. 580) § 157, providing that under such circumstances a judgment for defendant on the counterclaim shall not be for any larger sum in any event than a sum within the court's jurisdiction, exclusive of costs, and that nothing in the section shall estop the defendant from thereafter bringing an action against plaintiff to recover the difference.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 409, 412, 413, 429, 458; Dec. Dig. § 189.*]

2. JUDGMENT (§ 828*)—FULL FAITH AND CREDIT—STATUTES—EXTRATERRITORIAL FORCE.

Where a counterclaim was filed in a Municipal Court action in New York, which in amount exceeded the court's jurisdiction as authorized by Municipal Court Act (Laws N. Y. 1902, c. 580) § 157, providing that judgment on the counterclaim shall be limited to $500, but that the judgment shall not bar suit for the remainder, a suit in Ohio by the counterclaimant for the balance, after recovering $500 thereof in New York, was not objectionable as giving extraterritorial force to the New York statute, since it amounted only to giving the New York partial judgment the same faith and credit which would be given to it in New York.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*]

3. COURTS (§ 189*)—MUNICIPAL COURTS—JUDGMENT—CONSTRUCTION.

The New York Municipal Court Act (Laws N. Y. 1902, c. 580) limits the court's jurisdiction to $500, and section 157 authorizes a counterclaim in excess of that sum, but provides that, if judgment is rendered in defendant's favor on the counterclaim, the amount allowed cannot exceed the court's jurisdiction, exclusive of costs, but the judgment shall not estop the defendant from bringing another action against the plaintiff for the difference. Defendant sued plaintiff in the Municipal Court in New York to recover $405, and defendant interposed a counterclaim for $3,950. Judgment was rendered on a verdict in favor of defendant on the counterclaim for $69.27. No interest was recited in the judgment; but if interest was figured on the $405 from the dates of the respective items, and if the counterclaim was considered as $500, the discrepancy would be about $1 and negligible. Held, that the judgment, construed in connection with the statute, showed with sufficient certainty that the counterclaim considered by the jury was an amount equal to $500 of the counterclaim alleged, and that the record did not show that the jury intended to allow only $69.27 in settlement of the whole counterclaim.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 409, 412, 413, 429, 458; Dec. Dig. § 189.*]

4. JUDGMENT (§ 721*)—FOREIGN JUDGMENT—RES JUDICATA.

Plaintiff in a prior suit by defendant against him filed a counterclaim for $3,950, based on an alleged cause of action for commissions in the sale of a pump, and in that action recovered a judgment for $69.27, after which plaintiff sued defendant in Ohio to recover an alleged balance of

_____

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

205 F.—14

the counterclaim in excess of $500, which was the extent of the New York court's jurisdiction, and which was used to offset the claim against plaintiff in that action. *Held*, that the New York judgment was res judicata as to the existence of a contract between plaintiff and defendant for the sale of the pump, the breach thereof by defendant, and that plaintiff had at least suffered $500 damages, so that the only further question open for consideration was the amount of further damages, if any, recoverable by plaintiff.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1238, 1252; Dec. Dig. § 721.*]

**5. JUDGMENT (§ 721*)—RES JUDICATA—EVIDENCE.**

Where plaintiff in a prior action by defendant against him filed a counterclaim for $3,950, for breach of an alleged contract to manufacture a pump, which plaintiff had sold to a customer on commission, and defendant recovered an amount equal to the jurisdiction of the court on such counterclaim, evidence that defendant had never broken the contract, because plaintiff had not procured a sale on terms which defendant would accept, was inadmissible; the prior judgment being conclusive on the question of breach.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1238, 1252; Dec. Dig. § 721.*]

**6. DAMAGES (§ 182*)—DUTY TO DIMINISH—OTHER WORK.**

Plaintiff procured for defendant a contract for the sale of a pump, to be installed in a New York building under an agreement that would net him $3,950 commission. On defendant's refusing to accept the contract of sale to build a pump, because it did not provide for payments as the work progressed, plaintiff procured the acceptance of a contract by another concern, which furnished and installed the pump, and paid plaintiff $3,300 commission. *Held* that, since the article sold was one for a special use, to be built according to specific specifications, and there was but one sale, evidence of the commission actually received therefrom was admissible in mitigation of the damages recoverable by plaintiff from defendant, under the rule that plaintiff was bound to minimize his loss as far as possible.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 473, 500; Dec. Dig. § 182.*]

**7. DAMAGES (§ 182*)—DUTY TO MINIMIZE—PLEADING.**

In an action for breach of a contract to pay plaintiff commissions for selling a pump, evidence that he received commissions from another manufacturer for selling the substituted pump was matter in mitigation, and was available, though not pleaded.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 473, 500; Dec. Dig. § 182.*]

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; William L. Day, Judge.

Action by Manuel Llera against the Canton-Hughes Pump Company. Judgment for plaintiff, and defendant brings error. Reversed, and new trial ordered.

In an action brought by Llera, as plaintiff, and founded upon a judgment which had been rendered for him and against the Pump Company, by the Municipal Court of New York City, the District Judge directed a verdict in plaintiff's favor, leaving to the jury only the computation of interest; and verdict and judgment were rendered for $4,317. The Pump Company assigns error upon this direction, and upon the rejection of offered evidence.

It appeared that a Building Company desired to install, in the basement of a particular building in New York City, a pump specially adapted to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

requirements of this position, and Llera, who had acted as New York agent for the Pump Company, brought the matter to the attention of its officers. This resulted in an agreement by which, if Llera could procure the Building Company to purchase this pump from the Pump Company, Llera should receive from the Pump Company, as compensation, the excess of the purchase price above a stated base. There seems to be no dispute, save as to the terms of payment under which the Pump Company would accept the order. Llera did procure from the Building Company an offer to purchase the pump, but the offer was declined by the Pump Company solely on account of unsatisfactory terms of payment. Llera then notified the Pump Company that he had performed his part of the contract, and that it was indebted to him in the sum of $3,950. Llera owed the Pump Company, as the undisputed balance of prior transactions, $405, and it brought suit against him therefor in the New York Municipal Court. Llera answered, setting up as a first defense that the Pump Company was, in New York, a foreign corporation, and had not complied with the requirements of the New York law respecting such foreign corporations; for a second separate defense, that the Pump Company had not paid the annual license fee required by the New York laws; and, for a counterclaim, that the Pump Company was indebted to him in the above sum of $3,950; and he prayed affirmative judgment in his favor for the sum of $500, the limit of the jurisdiction of that court. Eventually a judgment was entered in that cause, which recited that the jury had rendered a verdict "in favor of the defendant, against the plaintiff, upon the defendant's counterclaim, for the sum of $69.27," and thereupon adjudged that the defendant recover from the plaintiff this sum of $69.27, damages, and costs.

The pertinent section of the New York statutes, establishing and regulating the Municipal Court, is given in the margin.[1]

In the present action, brought in the Circuit Court for the Northern District of Ohio, Llera alleged, for a first cause of action, the New York judgment for $69.27, with costs and interest, and, for a second cause of action, the claim of $3,950, less the $500 said to have been credited in the course of, and by the operation of, the New York judgment, making a net demand of $3,450, on this second cause of action. Upon the trial, a transcript of the New York proceedings was received in evidence, and the conclusion of the trial court was that the matter was res judicata, and that plaintiff was entitled to judgment.

Ong, Thayer & Mansfield, of Cleveland, Ohio, and J. A. Jeffers, of Canton, Ohio, for plaintiff in error.

Smith, Taft & Arter, of Cleveland, Ohio (Charles K. Arter, of Cleveland, Ohio, and Harmon S. Graves, Robert M. Miles, and C. S. Yawger, all of New York City, of counsel), for defendant in error.

Before WARRINGTON, KNAPPEN and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). No question is made as to the rightfulness of the judgment below, to the extent that it covers the $69.27, and costs and interest, being the amount of the money judgment actually entered by the New York

[1] Section 157 of the Municipal Court Act: "Counterclaim, Where Amount is in Excess of Court's Jurisdiction—Where defendant has a counterclaim which is in excess of the amount of the jurisdiction of this court, the counterclaim may be interposed, and in the event of judgment being rendered in defendant's favor, sustaining said counterclaim, said judgment shall not be for any larger sum in any event than the sum to which the court has jurisdiction, exclusive of costs, but nothing in this section shall be construed to estop such a defendant from bringing an action against the plaintiff for the difference between the sum of the court's jurisdiction and the sum claimed by said defendant to be due, unless the judgment shall state that the sum awarded by the judgment is the whole amount found to be due."

court. The question is whether that court adjudicated the existence of the whole counterclaim substantially as alleged; and since jurisdiction of the person and, in a primary way, of the subject-matter, by the New York court, is clear, and since the judgment as entered does not, in terms, find the $3,950 indebtedness, the question of res judicata reduces itself to one of how much may be inferred from the record.

[1, 2] We may first observe that the rule in force in many jurisdictions regarding splitting causes of action, whereby a judgment taken for part of one indivisible demand bars any action on the remainder, does not apply to this case. That rule is incidental to, and has to do with, the effect of the judgment rendered, and of necessity the rule must be subject to the legislative control of that state whose court renders the judgment. Here that state was New York; and by the same section which limits the jurisdiction to $500 it is expressly provided that a suit for the remainder of the counterclaim shall not be barred, except under the specially stated conditions. To permit a suit for such remainder to be brought in another state does not give extraterritorial effect to the New York statute, but only gives to the New York partial judgment that same faith and credit, no more and no less, which it has in New York. Union Bank v. Memphis, 189 U. S. 71, 75, 23 Sup. Ct. 604, 47 L. Ed. 712.

We next observe that the limitation of the jurisdiction of the New York court to the sum of $500 does not operate necessarily to prevent the existence of an adjudication affecting a larger sum. When it is once permitted that $500 be cut off from the main demand and used as a counterclaim, this $500 becomes, in a very practical sense, an installment of the main demand, payable separately, and the situation is parallel to an action for an installment of rent under a lease, in which action a judgment for the installment establishes the existence of the lease, the principal obligation, from which the installment is thrown off. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195; Louisville Co. v. Carson, 169 Ill. 247, 48 N. E. 402.

[3] The difficulty with this case arises from the peculiar facts. It is said that the jury, in the New York case, for all the record shows, may have sustained the first or the second defense, which would have entirely defeated plaintiff's demand for $405, and that, in such event, a judgment for $69.27 was not for a $500 installment of the $3,950 demand, but of necessity must have been for the entire counterclaim which the jury thought established. It is further said that the $405 was made up of numerous items, any portion of which may have been disallowed, and that this, also, would imply that the jury's finding could not have been for a $500 installment, although the discrepancy would be less than if plaintiff's demand had been entirely rejected. It is further said that in no event can the judgment be reconciled with a finding of a $500 installment. No interest is recited in the judgment, and if it be excluded on both sides, there is still a discrepancy of $26; that is to say, $405 plus $69 lacks $26 of being $500. If, however, interest be figured on the $405 from the dates of the respective items, and if the counterclaim be considered $500, then plaintiff's demand becomes about $432, and the discrepancy becomes about $1. These facts

make it clear that, in determining whether an allowance of $500 out of the counterclaim should be inferred from the record, we have, on the one hand, such weakness of inference as these recited criticisms indicate, and, on the other hand, the express declaration of the New York statute that a finding for defendant on a counterclaim shall not be considered as in full of the counterclaim, unless the judgment shall so state. It may well be that, in spite of this statutory provision, and in spite of the absence on the face of the judgment of any declaration in words that the finding for defendant was in full of the counterclaim, nevertheless the entire record might make that so clear that it must be assumed. This record does not fairly raise that question. We are satisfied that the New York statute at least raises a presumption that such a judgment, which does not on its face declare that it is not "the whole amount found to be due," is not in fact for "the whole amount"; and with the aid of such presumption we are satisfied that the present record reasonably indicates an award and a judgment in favor of defendant for $500 of the alleged counterclaim, and thus adjudicates the existence of the foundation on which such $500 installment rested.

In the answer in the New York case there is no denial of any items in the $405 claim of plaintiff; the position that plaintiff could not be a party plaintiff at all is not very consistent with a judgment against plaintiff; the answer contains no suggestion that there was any counterclaim, excepting the entire one for $3,950; taking one very natural method of computation, the discrepancy between the finding rendered and a finding on the $500 basis is negligible. Putting these things together, we think they lead with reasonable certainty to the inference that the jury found the existence of a counterclaim amounting to more than $500, and assessed $500 thereof against the plaintiff, rather than to the inference that they found a counterclaim of only $69, or of any sum between that amount and $500. We are satisfied that the certainty of the former of these two inferences is sufficient to meet the rule of "necessary intendment" and "certainty to every intent." Chapman v. Smith, 16 How. 114, 14 L. Ed. 868; Russell v. Place, 94 U. S. 606, 24 L. Ed. 214.

[4] It follows that the District Court was right in assuming that three things were not open to inquiry in this case: The existence of the contract, its breach by the Pump Company, and at least $500 damages to Llera. Obviously the estoppel of the judgment went no further. The question of the amount of damages recoverable by Llera was open, in so far as it was a distinct question from that of the existence of a right of action. He testified that, while the amount of his profit depended on the cost of installation and installation had never taken place, yet that there had been an absolute agreement, fixing, as between him and the Pump Company, the maximum cost of installation; and though this subject was not foreclosed by the former judgment, yet Llera's testimony does not seem to have been distinctly challenged on this point. The trial judge assumed that this testimony was uncontradicted, so as to justify instructing the jury to find damages in the sum of $3,450; and in the absence of any more specific contest on this

subject, brought to the attention of the trial court, this was not error. The same should be said of the question whether Llera was entitled to full compensation in the absence of having given any services in the matter of the installation of the pump. On neither of these subjects is the record in shape to justify consideration.

Defendant sought to minimize damage by two classes of offers of proof. All of these offers were rejected, and error is assigned.

[5] The first class of proof offered consisted of the testimony of the officers of the Pump Company, to the effect that, by the bargain between that company and Llera, the contract which he was endeavoring to get from the Building Company, and which the Pump Company would accept if Llera could get it, should provide for installment payments at the beginning of the work and as the work progressed, while the contract which Llera did procure and offer provided for no payment until the work was finished and accepted. Among all the numerous avowals of what would be proved by any one of these witnesses, we find nothing which was not of this character. This proof could affect the amount of damages only by showing that there never were any damages—and this because the Pump Company had never broken its contract with Llera. The offers, therefore, were to disprove the thing which had been adjudicated by the New York judgment, namely, that the Pump Company had broken its contract, and, as an essential corollary in this case, that the broken contract was, in this particular, as claimed by Llera. These offers of proof were all properly declined.

[6] The other class of offers raised a wholly different question. They were not in all respects definite, but we take them as fairly implying an offer to prove that, after the Pump Company declined the offered contract, Llera took practically the same offer of a contract, referring to substantially the same pump, in the same location, and for the same purpose, to a Pittsburgh pump company, which accepted the contract, furnished and installed the pump, and paid Llera about $3,300 for his commission. On the one hand, it is said that plaintiff's right of action was complete, and it is no concern of the defendant what compensation plaintiff gets out of another transaction between other parties; on the other hand, it is urged that the plaintiff, in all cases of this character, is under a duty to the defendant to minimize the loss as far as plaintiff reasonably can, and that this alleged transaction would operate under the spirit of the rule to diminish plaintiff's loss, which defendant must pay. So far as the briefs of counsel indicate or our investigation discloses, the question, as applied to these facts, is novel, and we must decide it according to what we think the controlling principles, and without the aid of precedent.

It is quite true that in the ordinary case of a broker or salesman, who loses the commission on a sale because the vendor, his principal, refuses to proceed, his subsequent sales for other principals would be immaterial; but in the usual case, and in every reported case of this character which we find (Sutherland on Damages [3d Ed.] vol. 1, § 158), the sales were of a commodity having a general market, or, at least, of such an article and under such circumstances that the broker

might have made both the first and the second sales. Here, as we interpret the offers, there is no room for the possibility that Llera could have carried through both of these sales. The article was one for a special use, and to be built according to specifications for that use. There was only one demand, and it called for only one pump. The pump which the Pittsburgh company furnished filled the same want and was the same pump as to which defendant company made default. Llera had his customer, and he transferred the same customer, with the same demand, to another seller. His services, efforts, and skill in working up the sale and getting the customer were preserved to him, perhaps partly, perhaps wholly, and it seems clear to us that to permit full recovery against the recalcitrant vendor, without any regard to whether plaintiff has received compensation from other sources in the same subject-matter, would be permitting double compensation, and would be opening the door to fraud. If a broker may receive commission for a sale which meets and fills a specific demand, and also the full agreed commission from another vendor who has defaulted in that same sale, thus making two commissions, why might he not get three or four commissions, or any other number, out of the same essentially single sale?

In one sense, the employer who has wrongfully discharged his servant, and who is liable for the salary for the remainder of the term, is not concerned with what the servant does; but the law endeavors to make the servant whole, not to give him profit, and so requires that, if he gets other employment during the term, the compensation he receives pro tanto exonerates his former employer. The principle is that, if he gets compensation for his time and labor from one, he cannot get it also from another; and we cannot doubt that this principle applies to the case under consideration, and that the offered evidence was admissible. This is not saying that the Pump Company would be entitled to the benefit of the entire $3,300, which amount may have covered additional expense and additional services and time on Llera's part, not within the scope of the compensation contemplated by his contract with defendant. Questions of that character cannot be considered on this record. We only decide that the offered evidence tended to show a diminution of that recovery to which plaintiff might otherwise be entitled. Warren v. Stoddard, 105 U. S. 224, 229, 26 L. Ed. 1117; Lillard v. Ky. Co. (C. C. A. 6th Cir.) 134 Fed. 168, 178, 67 C. C. A. 74. Since this diminution affected only the excess above $500, it is not foreclosed by the New York judgment.

[7] We are asked not to reverse the judgment for this error, because the Pump Company's answer made no reference to the Pittsburgh transaction; and so it is said, although it was not said in the court below, that the evidence was inadmissible for lack of a pleading basis, should have been excluded for that reason, and its exclusion, although for another reason, cannot be prejudicial error. We do not need to consider the force of such a position, if its premises were correct; but we are not satisfied that any applicable rule of pleading in Ohio imperatively requires such matter of defense to be pleaded. Though it has an affirmative aspect, it is really not affirmative, but is a

matter in mitigation of damages, and it is held that such matters need not be pleaded. Osborn v. Lovell, 36 Mich. 246. There are decisions in Ohio which seem to recognize the same rule. White v. Thomas, 12 Ohio St. 312, 80 Am. Dec. 347; Barholdt v. Wright, 45 Ohio St. 177, 182, 12 N. E. 185, 4 Am. St. Rep. 535.

The judgment below must be reversed, with costs, and a new trial ordered.

### On Petition for Rehearing.

It is strongly impressed upon us that, when defendants refused the offered contract, Llera's services were fully performed and his compensation fully earned, so that there was no analogy with the case of an executory contract of service. In view of the circumstances of the first submission and the apparent novelty of the question, we have given careful, further consideration. The analogy with a contract of service not fully performed is far from perfect, but the underlying duty to minimize damges is similar. For further, illustration: · One who had provided himself with materials, which it was his duty to provide, to be used for the carrying out of a promised contract, and had then been denied opportunity to perform, could not recover the full agreed compensation (covering the cost of these materials) and not account for their·value remaining in his hands. Again, it is inaccurate to regard Llera as a mere agent for defendants. He was a broker. He undertook to go ·out and procure a contract of purchase, and defendants agreed to buy this contract from him, and to pay him a profit. Later they unjustifiably refused to buy, and he sold the contract to some one else. He should not have two profits, but only be made whole. Llera's position that at the moment of breach his right of action became fixed and perfect, and not to be affected by his further acts in the·same matter, leads too far. We are confirmed in our view that he cannot have full compensation twice over.

It is also urged that the new and further services given by Llera in the course of getting the Pittsburgh contract were so inseparably mingled with the effect of the former labor, skill, and services that they cannot be apportioned, and hence that defendants cannot say that any particular sum should·be credited to them on account of the value of the labor, skill, and services which Llera preserved and carried over into the Pittsburgh contract. True, there can be no mathematical apportionment; but we see no greater difficulty in finding the, value so preserved, and for which defendants should have credit, than in the multitude of cases where a jury is compelled to estimate values or damages without any exact rule of computation.

The jurisdiction of the New York court being limited to $500, there was and could be no finding as to the existing amount of the claim above $500. For all that the judgment establishes, the credit now claimed on account of the Pittsburgh matter, $3,300, might have been claimed and allowed in the New York litigation. It would have still left more than $500 due, and that judgment would have been unaffected. We say this to make· clearer our conclusion that to allow credit on account of the Pittsburgh matter is not inconsistent with the binding effect of the New York judgment.

The petition for rehearing is denied.