## GERACY, Inc., v. HOOVER.

### No. 8041.

United States Court of Appeals for the District of Columbia.

Decided Dec. 14, 1942.

Mr. Samuel B. Brown, with whom Mr. Nathan M. Brown was on the brief, both of Washington, D. C., for appellant.

Mr. James M. Earnest, with whom Mr. W. Gwynn Gardiner was on the brief, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and RUTLEDGE, Associate Justices.

MILLER, Associate Justice.

On March 13, 1940, appellee instituted a landlord and tenant proceeding in the Municipal Court, for the restitution of premises at 2801 Fourteenth Street, N. W., in the District of Columbia, and for arrears of rent. On a date not revealed by the record appellant answered, admitting that it was in possession of the premises and denying any default in the payment of rent.

On April 10, 1940, appellant filed its complaint, in the present case, in the District Court, seeking damages in the amount of $2859.05 for negligent injury of chattels located in the same premises at 2801 Fourteenth Street, N. W.; which damages were alleged to have been caused by leakage of rain; which, in turn, was alleged to have resulted from negligent repairs made to the roof by appellee, the owner of the premises. This complaint was entitled "Complaint in Nature of *Plea* of Set Off or *Plea* for Recoupment." [Italics supplied] In it appellant recited the facts of its tenancy of the premises at 2801 Fourteenth Street, N. W., in the District of Columbia; the ownership of the premises by appellee; that appellee had instituted landlord and tenant proceedings in the Municipal Court; that she was not entitled to recover either possession or the amount claimed for rent; it

alleged that appellee was indebted to appellant in the sum of $2859.05 on account of damages; it stated "that it is willing that its claim be set off against the action of the defendant pending in the Municipal Court of the District of Columbia and that it is willing to recoup its said claim in the sum of $2,859.05 against the said action of the defendant. Wherefore, the plaintiff demands: (1) That it be allowed to set off or recoup the sum of $2,859.05 due and owing from the defendant to it, against the claim of the said defendant, and (2) that judgment be entered against the defendant in the sum of $2,859.05, and (3) that the cause in the Municipal Court of the District of Columbia pending therein and identified as Landlord and Tenant No. 855281 be caused to be certified to this Court and that said Municipal Court of the District of Columbia be directed to so certify said cause of action."

Thereafter, but on a date not revealed by the record, appellant filed an affidavit of defense in the landlord and tenant proceeding. In this affidavit appellant denied default; alleged that appellee was indebted to it in the sum of $2859.05 by reason of damage to its chattels located in the same premises, caused by the alleged negligence of appellee. The affidavit then continued as follows: "Your affiant accordingly denies that the defendant is indebted to the plaintiff in the sum of $525.00 or that the plaintiff is entitled to possession to the, said premises, but states on the contrary that the said plaintiff is indebted to the defendant in the sum of $2,859.05, and your affiant further states that there has been filed by the defendant in the District Court of the United States for the District of Columbia, a Complaint in the nature of a plea of set off or plea for recoupment against this cause of action, in which Complaint this defendant requests that this cause of action be certified to the said District Court of the United States for the District of Columbia in order that the claim of this defendant may be set off against this action or that the said defendant may be allowed to recoup its claim presented in said Court in the sum of $2,859.05 against this cause of action."

When the landlord and tenant case came on for hearing the Municipal Court denied appellant's request that the proceedings be certified to the District Court. The case .was tried on May 28, 1940. At that time the undisputed testimony showed that appellant had not paid the rent claimed. Appel-

lant then offered the testimony of several witnesses tending to prove that appellee had repaired the roof of the premises; that these repairs were negligently made; that as a result the roof leaked and. occasioned damage; and that an action to recover the damages had been instituted in the District Court. Appellee then offered testimony that no repairs had been made to the roof at the time alleged by appellant; and that repairs which had been made were not made negligently. In this trial appellant did not ask for a money judgment against appellee and that question was not submitted to the jury. However, under the instructions given, the jury could have returned a general verdict for appellant upon the evidence. Instead, it returned a verdict in favor of appellee for the rent and for possession. Judgment was entered accordingly.

Thereafter, but on a date not revealed by the record, appellee filed an amendment to her answer in the present case which reads as follows: "The defendant further alleges that since the filing of her original answer herein the landlord and tenant proceeding, namely, Case No. 855281, filed by this defendant against the plaintiff for possession of premises 2801 14th Street, Northwest, and for judgment for rent for the period from September 1, 1939, to March 1, 1940, has been tried before a jury in the Municipal Court of the District of Columbia; that defendant's sole defense in said cause was based entirely upon the allegation that the plaintiff therein was indebted to the defendant in the sum of $2859.05, being the same amount and arising out of the same alleged facts as here involved; that at the trial of said cause the jury returned a verdict in favor of plaintiff, and the alleged claim of plaintiff as here involved has already been decided adversely to the plaintiff herein and is therefore *res judicata.*" On June 2, 1941, counsel representing both parties stipulated that the district judge, sitting without a jury, might hear and determine the legal sufficiency of appellee's defense of *res judicata.* The judge held that the purpose of the rule of *res judicata* is to give only one trial for each issue; that the Municipal Court had tried the issue of damages and that appellee was entitled to judgment.

We see no reason for disturbing the judgment. While we sympathize with appellant in the dilemma which seemed to confront it, nevertheless, it was within its power to elect in what manner it should vindicate its claim.[1] Furthermore, it was its duty to elect. Appellant's pleadings indicate that it tried to avail itself of the jurisdiction of both courts, at the same time, for the trial of the same issue. In fact, the complaint, which initiated the case in the District Court, is entitled a *"Plea* of Set Off or *Plea* for Recoupment." [Italics supplied] The only sense in which it could be a plea was that it was by way of answer to the pleading of appellee theretofore filed in the Municipal Court. The law entitled appellant to but one trial of the issue.[2] If it chose to reduce its claim to the dimensions of municipal court jurisdiction, and submit to the adjudication of that court, it was privileged to do so;[3] but, if it did so, it forfeited the privilege of having the same issue adjudicated in the District Court.[4]

Appellant now contends that the Municipal Court lacked jurisdiction to give judgment in the full amount of its claim; hence, that the adjudication cannot be said to have been one upon the same issues, between the same parties, in a court of competent jurisdiction. That the Municipal Court lacked jurisdiction to give judgment in the amount of $2859.05 is not disputed. But that it had jurisdiction to try a defense, voluntarily submitted, to appellee's claim for possession and for rent is beyond dispute. As appellant elected to plead its claim as a defense, the issue was within the jurisdiction of that court.[5] What the situ-

---

[1] Brown v. First Nat. Bank of Newton, 8 Cir., 132 F. 450, 452, certiorari denied 196 U.S. 641, 25 S.Ct. 796, 49 L.Ed. 631; Silberstein v. Begun, 232 N.Y. 319, 323, 133 N.E. 904, 905.

[2] Brown v. First Nat. Bank of Newton, 8 Cir., 132 F. 450, 455, certiorari denied 196 U.S. 641, 25 S.Ct. 796, 49 L. Ed. 631.

[3] Porter v. Rapine, Fed.Cas.No.11,288, 2 Cranch C.C. 47; Witt v. Hereth, D.C. Ind., 30 Fed.Cas. page 404, No. 17,-921; Grammar v. Sweeney, Mo.App., 297 S.W. 706, 708. Note, 28 L.R.A. 221.

[4] Brown v. First Nat. Bank of Newton, 8 Cir., 132 F. 450, 453, 455, certiorari denied 196 U.S. 641, 25 S.Ct. 796, 49 L.Ed. 631.

[5] D.C.Code (1940) § 16—1903. See Scott, *Collateral Estoppel by Judgment,* 56 Harv.L.Rev. 1, 28: "On the other hand, if the patient interposes a defense which is litigated and determined by the judgment, the judgment is conclusive as to the matter litigated. If the patient resists the claim on the ground of the neg-

ation might have been and what appellant's rights might have been, if the issue had been determined in its favor by the Municipal Court, we need not decide. There is little authority to support a further recovery, even under such circumstances.[6] But in the present case the Municipal Court decided that appellant had no cause of action, for any amount; thus adjudicating, adversely to appellant, the entire, fundamental and underlying issue of liability,[7] the elements of which are the same regardless of the amount involved. As that precise issue was thus fully tried, and determined adversely to appellant, the determination became *res judicata* thereof;[8] even though, if appellant had elected to do so, it might have preserved its claim[9] and, possibly, have made a recovery upon it in the District Court.

Perhaps a modern system of administration of justice should operate in the medium of a court which has jurisdiction over all cases;[10] with provision for automatic transfer,[11] or for consolidation and transfer upon motion from one division to another; without the penalties which may now result from the existence of courts of concurrent jurisdiction, and from the selection of the wrong remedy or the wrong jurisdiction. But Congress has elected to preserve an older and more conventional system, with a variety of functions and powers distributed to the several courts. Whatever we might wish to do, if we had the judicial powers of an oriental caliph, we are confined to the structure of judicial determination which Congress has provided and we are bound by the rule of *res judicata*.[12]

Affirmed.

---

ligence of the physician, and it is found that he was not negligent and judgment is given for the physician, the patient cannot recover for the harm since the absence of negligence is *conclusively established*. If on such an issue judgment is given for the patient, he is not precluded from bringing an action for malpractice; and in such action the negligence of the physician will be treated as *conclusively established*, although the physician may interpose any other defenses he may have. The patient is not splitting his cause of action by using the fact of the physician's negligence as a defense in the first action and as a claim in the second action." [Italics supplied]

6 Canton-Hughes Pump Co. v. Llera, 6 Cir., 205 F. 209, 211, 212, 213. But see Silberstein v. Begun, 232 N.Y. 319, 323, 133 N.E. 904, 905; 2 Freeman, Judgments (5th ed. 1925) § 797.

7 Scott, *Collateral Estoppel by Judgment*, 56 Harv.L.Rev. 1, 23, 24: "Thus, if the issue in the first action was whether the defendant was negligent and judgment was given for the defendant, the plaintiff cannot recover in the second action for the alleged negligence of the defendant; if judgment was given for the plaintiff, the defendant is precluded from denying his negligence."

8 Allamong v. Falkenhof, 39 Ohio App. 515, 177 N.E. 789, 791, 792.

9 Brown v. First Nat. Bank of Newton, 8 Cir., 132 F. 450, 452, certiorari denied 196 U.S. 641, 25 S.Ct. 796, 49 L.Ed. 631; 2 Freeman, Judgments (5th ed. 1925) § 797. See Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1, 2: "If an issue is actually litigated and determined, that issue cannot again be litigated between the parties even though

it arises in an action based upon a different claim."

10 See Pound, Organization of Courts (1940) 273, 287, 289; Dodd, The Judiciary in a Model State Constitution, III Report of New York State Constitutional Convention Committee (1938) 1839.

11 Calif.Code Civ.Proc. (Deering, 1941) § 396: "If an action or proceeding is commenced in or transferred to a court which has jurisdiction of the subject matter thereof as determined by the complaint or petition, and it thereafter appears from the verified pleadings, or at the trial, or hearing, that the determination of the action or proceeding, or of a counterclaim, or of a cross-complaint, will necessarily involve the determination of questions not within the jurisdiction of the court, in which the action or proceeding is pending, the court, whenever such lack of jurisdiction appears, must suspend all further proceedings therein and transfer the action or proceeding * * * to a court having jurisdiction thereof. * * *

"*Right to remit excess.* In any case where the lack of jurisdiction is due solely to an excess in the amount of the demand, the excess may be remitted and the action may continue in the court where it is pending."

Cf. D.C.Code (1940) § 11—809: "Set-off or counterclaim—Pleading—Retention of jurisdiction. * * * If the set-off or counterclaim be for more than the jurisdictional limit of said [small claims and conciliation] branch but within the jurisdictional limit of this [Municipal] court, the action shall nevertheless remain in said branch and be tried therein in its entirety."

12 Scott, *Collateral Estoppel by Judg-*

RUTLEDGE, Associate Justice (dissenting).

I dissent. The record, consisting of an agreed statement, is in a very unsatisfactory condition. Apart from the District Court's findings, it is not at all clear the issue of the landlord's negligence was not withdrawn from the jury, either by the Municipal Court's instructions or by the appellant. Statements in its brief, though somewhat equivocal, seem to assert this. If the issue was withdrawn, the judgment there went for the landlord by default. In that event res judicata would not apply, even under the majority's view. So much of concession they make to the tenant's dilemma, arising from the Municipal Court's limited jurisdiction and their application of res judicata.

But the District Court expressly found that the Municipal Court did try the negligence issue as a matter of defense only, not as a basis for affirmative relief. And the statements in appellant's brief may be taken, consistently with this, to mean that the claim was withdrawn merely as a cause of action, not as a defense. Accordingly, on this record, we cannot say that the District Court's findings were not supported by the evidence.

Taking the case in that light, I think nevertheless it was error to hold, as a matter of law, that the Municipal Court's judgment barred Geracy from later asserting the claim. In my opinion Congress did not intend this to follow from creation of that court, nor does res judicata require it. That view creates consequences for the parties, especially the tenant, and for the two courts wholly inconsistent with the reasons and purposes of establishing the Municipal Court and with the usually

accepted principles for applying res judicata. It forces the tenant to surrender possession without hearing or, in the alternative, to give up his claim for damages without opportunity for relief in excess of the limited amount the inferior court may award. It compels him to forego using his claim as a defense or as a cause of action. It gives the landlord power to set up a one-sided race for trial between the two courts, and by virtue of the Municipal Court's speedier procedure enables it to oust the District Court of its exclusive jurisdiction and in effect to usurp it. One or two illustrations will show these effects more clearly.

First, Landlord L leases his department store building for twenty years to Tenant T at a rental of $1,000 monthly. In the first year of the term L negligently repairs the roof, supplies support for foundations or walls, or handles fire or explosives on the premises, damaging T's stock for $25,000. T refuses to pay rent further until L settles for the injury. He declines to do this. T then sues in the District Court to recover for his loss. L answers or delays the trial in any of the readily available methods. Then, to forestall a judgment in T's favor, he sues for possession in the Municipal Court, alleging default in rent and asking also for $1000 of the arrears, as he may. T then must plead or default. If he defaults, he preserves his claim. [1] But he loses possession without hearing on the merits, and by doing so either destroys his business or incurs the loss of finding and moving to a new location. If he defends, however, he not only risks a possible adverse judgment on his right to possession and liability for rent, which is all the court has

---

ment, 56 Harv.L.Rev. 1, 3: "But matters actually litigated and determined in the prior action cannot be relitigated in the later action. As to such matters, we have said there is a collateral estoppel. The estoppel does not rise from representations made by one of the parties upon which the other party has relied, as in the case of the ordinary estoppel in pais. But a party who has once fought out a question in litigation with the other party is precluded from fighting it out again. The term 'collateral' estoppel is intended to emphasize the fact that the causes of action involved in the two proceedings are different, even though the issues or some of them are the same."

[1] Notwithstanding one ordinarily is

foreclosed not only concerning issues raised and litigated, but also concerning issues which might have been but were not raised. Chicot County Drainage District v. Baxter State Bank, 1940, 308 U. S. 371, 60 S.Ct. 317, 84 L.Ed. 329; Andrews v. Reidy, 1936, 7 Cal.2d 366, 60 P.2d 832, 834; Lee v. Hansberry, 1939, 372 Ill. 369, 24 N.E.2d 37. But where the second suit is brought upon a different cause of action and the issue was not, though it might have been, litigated in the first one, the judgment does not bar its determination on the merits. Cromwell v. Sac County, 1877, 94 U.S. 351, 24 L.Ed. 195; cf. Scott, Collateral Estoppel by Judgment (1942) 56 Harv. L.Rev. 1, 4, 5.

power to determine. He also faces the certainty that the judgment will determine finally his right to damages, a matter the court has no power to adjudicate and the District Court alone can determine. In substance the inferior court adjudicates both rights finally and conclusively, though it purports only to deal with possession and rent; and that is true apparently whether the tenant wins or loses there. [2]

A less striking illustration may be taken of a patient injured by a physician's negligence or malpractice to an extent compensable at $10,000. The doctor's agreed fee is $500. The patient sues in the District Court for $10,000. The physician-defendant moves or pleads to delay trial. He then sues in the Municipal Court for his fee. If the patient defaults, the physician recovers $500 to which he is not entitled, or may not be, again without hearing on the merits; and he retains this though the patient later wins his suit for damages. If the patient defends, the cause of action is "split," res judicata applies, and the District Court suit is at an end, without his ever having a chance to recover on his claim according to his substantive rights or to have a hearing upon it in a court competent to adjudicate it. That again is true even if he is successful in the Municipal Court.[3]

Such a system creates little less than a landlord's paradise. It works wholly to the advantage of the plaintiffs in the Municipal Court. Their power to sue there [4] enables them to limit their liability for negligence or malfeasance to $1,000 (now $3,000 [5]) in all cases, except those in which the tenant or the patient can afford to default. In many he cannot do this. Obviously he could hardly take such a chance in the department store case or any other involving rights or claims of substantially equivalent value. Default in such a case would mean not only the loss of leasehold rights without hearing, but also either destruction of the business or, if it could be moved to another location, disruption and expense hardly justified merely to preserve what is at best an uncertain chance of recovering damages, however meritorious the claim might be.

In other situations, as in the physician-patient example, [6] it would be obviously to the patient's interest to default. And it would be proportionately more so as the physician's fee might be smaller or his own claim larger. But if the default were clearly worth while, comparatively, to compel it in order to preserve the more important right or have hearing upon it is contrary to the law's general abhorrence of forfeitures and to the purposes for which the Municipal Court was formed. These were to furnish a speedier, less expensive and more adequate forum for disposition of small claims, not to force a choice between rights, their determination without hearing on the merits, or abdication of the District Court in favor of the inferior one brought about by the landlord's manipulation of their processes.

A third possibility may be open to the tenant, which the majority do not absolutely foreclose, though the implications of the opinion seem clearly to reject it. That would be that he could defend in the Municipal Court and, if successful, then prosecute his claim for damages to judgment. A few decisions support this view. [7] It is obviously a concession made out of consideration for the hardship to

---

[2] See note 7 infra and text.

[3] Ibid.

[4] It is always possible for a plaintiff to reduce his claim to proportions consistent with the limitation upon the court's jurisdiction, so that persons having claims actually in excess of this, by making such a reduction, as well as persons whose claims are actually within the amount, can take advantage of the opportunity to utilize the inferior court's processes so to limit their liability.

[5] By virtue of the Municipal Court Act, April 1, 1942, 56 Stat. 190, 1942 U.S. Code Cong. Serv. p. 285, effective July 1, 1942, consolidating the former Municipal and Police Courts into the present Municipal court and increasing the jurisdiction in civil matters to include claims of $3000 or less.

[6] Cf. Scott, Collateral Estoppel by Judgment (1942) 56 Harv.L.Rev. 1, 27, 28.

[7] Canton-Hughes Pump Co. v. Llera, 6 Cir., 1913, 205 F. 209, second appeal, 6 Cir., 1914, 215 F. 79; East Forty-Sixth Street Realty Corp. v. Max Gutschneider, Inc., 1918, 103 Misc. 491, 170 N.Y.S. 374; cf. Rundlett & Reynolds, Inc., v. Whitall, 1912, 76 Misc. 456, 135 N.Y.S. 697. But cf. Silberstein v. Begun, 1922, 232 N.Y. 319, 133 N.E. 904, for a different result after the New York statute was repealed. The Court of Appeals of New York appears to follow one rule in relation to small claims and a contrary one in respect to domestic rela-

the successful defendant, who otherwise would be foreclosed of his claim as a source of affirmative relief by the very judgment which establishes its merit. The concession, so far as it goes, seems proper. But it hardly relieves the tenant's dilemma so long as it remains coupled with the original requirement that he must default or run the risk of an adverse judgment in the Municipal Court, putting an end to further assertion of the claim as a cause of action. That risk forces him as a practical matter to choose between using it as a defense and asserting it later as a cause of action. His situation with the concession is therefore not much, if any, better than it would be without it and the concession, moreover, as is noted later,[8] involves an obvious departure from the established law of res judicata.

Whether or not the concession is made, therefore, the decision gives the landlord or other claimant in the inferior court an unfair advantage over his adversary, enabling him to utilize its processes to forestall and in effect to bring about a usurpation of the District Court's rightful and exclusive authority. I do not think Congress intended these consequences or that the Municipal Court should adjudicate a claim in excess of its jurisdictional limit in any event. Yet that is exactly what happens under the majority's view, when it decides the case on the merits. It forecloses finally any chance to recover on the claim and does this without ever affording one.

That is true, whether or not the concession is made, for even if the successful defendant could go on with his suit that does not nullify the conclusive effect of the adjudication when the defendant loses. Nor is that effect destroyed because the tenant might have defaulted and sued. It is the fact of decision, with conclusive effect upon a claim in excess of the limit, which is prohibited. That effect, whenever it occurs, is not wiped out merely because some alternative might have been followed to avoid it or because the chance existed before the decision was made that the effect might not attach to it. The matter is one of defect in the court, not merely of choice of forum by the litigants.

Congress intended the Municipal Court to keep within the bounds of power prescribed. It does not do that when it conclusively adjudicates a claim above them, whether the decision purports to sustain it or merely bars recovery. The latter is the effect here.

Congress intended none of these results, whether that the court should determine the claim finally at all events; or when the decision is for the landlord, but only inconclusively when it is for the tenant; or to force the latter to default in respect to possession in order to avoid foreclosure of the claim; or to enable the Municipal Court to oust the District Court of jurisdiction, either generally or, as here, in a particular case to which its power had rightfully and fully attached, much less to usurp it; or to make these consequences turn on which court could rush the cause before it to trial first.

It is not an escape from these consequences to label them the results of an "election." Such an argument might have been plausible if appellant had reduced its claim to $1,000 and asked for relief in that amount from the Municipal Court. Then it would have been seeking affirmative, as well as defensive relief. In that event there would have been more room for saying an election had been made to accept the limited relief the inferior court could grant in lieu of the larger amount recoverable in the District Court, and also for the view that appellant had split its cause of action. But appellant avoided this pitfall. It pleaded the claim, not as a matter of choice in preference to something else, but by compulsion and only so far as the necessity for defense required. It did this to avoid surrender of its right to possession without contest. When the only choice is to surrender one right in order to preserve the chance to assert another, and especially when they are of nearly equal value or both are of great value though not equal, the "election" resembles one to be shot or to be hung.

If res judicata could be thought rightly to require such results, this judge-made rule should give way before being allowed to dictate consequences so unjust and so contrary to the intent and explicit prohi-

---

tions matters. Cf. note 14 infra. See also, for citation of authorities that if the limited court determines the claim asserted defensively adversely to the defend-

ant on the merits, he cannot later assert it, 1920, 8 A.L.R. 694, 741.

[8] Cf. text infra at and following note 17.

bition of Congress. [9] But it does not require them. Nor does the learning about "splitting causes of action," if there is any difference between the two doctrines in this situation. [10] Both have their main core of policy in bringing an end to litigation. Both dictate that causes tried should not be tried again on the same or different issues. [11] Res judicata dictates also that issues tried should not be retried between the same parties, whether in the same cause or a different one. [12] These are the general consequences, though there are many qualifications, [13] when the two courts are of complete and coordinate jurisdiction. But they have limiting conditions. One is that both parties shall have full opportunity to present causes or defenses and to secure full and adequate relief in accordance with substantive right. This means, what is most important here, adjudication by a court competent not merely to hear issues, but to determine causes and afford relief to the parties. [14] Competence of the court is as essential as competence of the parties, and means competence to afford a remedy as well as to decide an issue. The limitation means also that one does not "elect" to assert his claim when he is forced by the facts and the plaintiff's suit against him to use it as a defense, nor does he "split" his cause of action when he does this. [15]

Res judicata also operates to bar equally the parties to the litigation and their privies, not to bar one but leave the other free or deny hearing if one loses but allow it if he wins. If the majority mean to reserve the question whether a successful defendant later can sue, they concede in effect that a partial or halfway and one-sided departure from the usual operation of the principle may be required in this situation, one essentially governed by the chance of the outcome of litigation. The cases sustaining this view [16] necessarily, though implicitly, make this concession. For, under normal application, it is the fact of decision, not how or in whose favor it is made, which makes res judicata operative, so that the defendant would be foreclosed regardless of his success or lack of it. The view that he can sue later, after winning on his defense, is therefore not an application, but a repudiation of the doctrine to that extent. If modification is to be made, the proper deviation would seem to be one which works equally to the advantage or disadvantage of both parties, not to the exclusive benefit of one.

If the majority intend however to reject the concession to the successful defendant and to apply the rule regardless of the outcome, they ignore the underlying requirement that decision, to operate as a bar, must be made by a court competent

---

[9] Cf. Adams v. Metropolitan Life Ins. Co., Mo.App., 139 S.W.2d 1098, 1101.

[10] Cf. note 15 infra.

[11] Cf. Scott, Collateral Estoppel by Judgment (1942) 56 Harv.L.Rev. 1, 2, citing Restatement of Judgments §§ 47-54.

[12] Id. at 2, 3.

[13] Ibid.

[14] Id. at 18-22 and authorities cited, including Misir Raghobardial v. Rajah Sheo Baksh Singh, L.R. [1882] 9 Indian Appeals 197; Loomis v. Loomis, 1942, 288 N.Y. 222, 42 N.E.2d 495, reversing 1941, 262 App.Div. 906, 28 N.Y.S.2d 809, with which compare Silberstein v. Begun, 1922, 232 N.Y. 319, 133 N.E. 904, and other New York authorities cited in note 7, supra; Baker v. Hart, Ch. 1747, 3 Atk. 542, 26 Eng.Reprint 1113; Clark v. Dew, Ch. 1829; 1 Russ & M. 103, 39 Eng. Reprint 40; Bogardus v. Clarke, 1832, 1 Edw. Ch., N.Y., 266, affirmed, 1834, 4 Paige, N.Y., 623. Contra: Keahi v. Bishop, 1874, 3 Haw. 546. Cf. also Note, 1942, 138 A.L.R. 346, 359; Blair

v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465.

"The question in all these cases is one of public policy. Should a court which has not been entrusted with jurisdiction to determine a matter directly be permitted to determine it incidentally, not merely for the purpose of deciding the controversy which it can properly decide, but also with the effect of precluding the parties from litigating the question in those courts which alone are entrusted with jurisdiction to determine it directly?" 56 Harv.L.Rev. 22. The answer, given in the author's words, is: "Although the authorities are somewhat meager, it seems clear that the judgment should not preclude the parties as to the matter in a subsequent action between them brought expressly to determine the matter in a court which has jurisdiction to determine it." Id. at 19.

[15] Scott, op. cit. supra note 11, p. 28, citing Notes, 1927, 49 A.L.R. 551, 1933, 83 A.L.R. 642, for the conflicting decisions.

[16] Cf. note 7 supra.

to determine the claim.[17] They say the Municipal Court was competent to determine the issue of negligence. That is true, but it is only half true. It was competent to determine the issue as a defense to the landlord's claim for possession and rent, or as a claim up to $1,000. But it had no power to determine that issue as a claim for more than that amount. Yet, as has been said, the effect of its decision has been to adjudicate adversely and conclusively a claim for $2,859.05.

The fallacy is in regarding competence to hear and decide an issue as being adjudication, without reference to competence to afford relief; in other words, that relief, which is the end of litigation, is no part of the adjudicative process. In that view, police courts, magistrates courts and others of limited jurisdiction have it in their power to swallow up the authority of courts of general jurisdiction. Jurisdictional limitations become meaningless. The power to determine includes both the power to decide issues and the power to afford relief. Whatever exceptions may exist in such matters as claims against the Government and declaratory judgments, they certainly are not authority for the view that when limited authority is conferred it is carte blanche to determine matters in excess of the limit or to do this whenever a common issue arises affecting matters on both sides of the line.

The Municipal Court had power to determine the negligence issue as a matter of defense and only so. It had none to determine that issue as the foundation for a claim of $2,859.05. The line dividing the power of the two courts is sharply and clearly drawn. To permit the inferior one to cross it, in the guise of applying res judicata to determinations which are within its power, not only violates the mandate of Congress. It perverts that principle by giving it a function and an effect beyond its purpose, namely, to foreclose rights without hearing or without opportunity for relief rather than to preserve against repeated attack rights which have been established by adjudication in a court competent not only to hear but to protect both parties.

In the unusual circumstances this case presents there are three possible courses to follow: (1) The one apparently chosen by the majority which forces the tenant to choose between defending his possession and having his day in court for damages; (2) applying some modified form of res judicata, such as the one-sided, chance-governed rule that the successful defendant only may later assert his claim; (3) frank recognition that the doctrine cannot be applied justly to both parties in this situation or without squarely clashing with the mandate of Congress that the Municipal Court shall not determine causes in excess of $1,000.

The real objection to the last course is that inconsistent judgments might result. The finding might be for the landlord in the Municipal Court and against him in the District Court, so that he would recover possession and also pay damages, a result impossible if a single fully competent court could determine both claims. This objection, however, is equally applicable under the majority's view. If the tenant defaults in the possession suit in order to preserve his right to trial in the District Court, the landlord gets back the property as for the tenant's breach of the lease; but the latter may win in the damage suit as for the landlord's breach. If the tenant defends and wins on the negligence issue in the suit for possession, he may lose on the same issue in the suit for damages, if the concession in his favor is made. Inconsistency in judgments therefore is not avoided by the majority's application of the principle. Since there may be inconsistency in any event, it would seem more fair and just to preserve the balance of inconsistency evenly, rather than unevenly, as between the parties and the courts. The results in most cases presumably would be consistent, since the party able to prove his claim in one court generally should be able also to succeed in the other. But that in some they might turn out contrary, owing to the vagaries of juries or for other reasons, would be better than to force forfeiture of right without hearing or adjudication by a court incompetent to hear one party's cause. In this situation it is better to have relitigation of an issue than to have denial of hearing for one party's cause.

In my opinion therefore the bar of res judicata should not be applied further than to prevent relitigation of the right to possession and the claim for rent. To that extent the Municipal Court had jurisdiction and its judgment is conclusive. But

---

[17] Cf. note 14 supra.

its power went no further. It had none to determine the claim for damages. That was the business of the District Court and the tenant should be free to continue with the prosecution of its cause there, without regard to the Municipal Court's decision on the negligence issue. In no other way can it be assured of a hearing, as is its right, upon that cause in a court competent to determine it; the District Court's jurisdiction be preserved fully against encroachment by the Municipal Court; and the latter be confined to adjudication within the prescribed limits of its power.

I agree with the majority that the appellant's dilemma is harsh. I do not think it is necessary. Perhaps legislation such as they suggest would be desirable. It is required only to overcome their extension of res judicata made in this case. Congress did not enact the doctrine, or require its application here. I think it directed the contrary result. The judgment should be reversed.