## MITCHELL v. DAVID.

No. 458.

Municipal Court of Appeals for the District of Columbia.

Feb. 14, 1947.

I. H. Halpern, of Washington, D. C., for appellant.

Milford Hillerson, of Washington, D. C. (W. E. Cumberland and Lewis Jacobs, both of Washington, D.C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD, and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This appeal arises from a directed verdict in favor of plaintiff granted on defendant's opening statement. Plaintiff sued for possession of premises leased to defendant as a rooming house on the ground of non-payment of rent, and, as permitted by Code 1940, § 45—911, also demanded judgment for accrued rent for three months beginning December 1, 1945, at $100 per month. Defendant filed an answer, a counterclaim and a so-called cross-claim. In the answer she alleged she was not indebted for the rent because plaintiff had not made repairs, which she claimed constituted the "minimum service standard" for the premises. In the counterclaim defendant alleged plaintiff failed to make repairs as he was obligated to do and that as a consequence the defendant lost rent for a portion of the premises; that the defendant had to have electrical repairs made; that the defendant had to buy window shades; that plumbing repairs were needed which defendant attempted to have done; and that the gas bills were excessive due to the failure of the plaintiff to make repairs. The amounts defendant claimed as losses on these accounts exceeded the amount of rent sued for. In the so-called cross-claim defendant alleged that plaintiff had violated the minimum service standard under the Rent Control Act, D.C.Code 1940, § 45—1601 et seq., in refusing to make repairs and supply furnishings, and asked for judgment in the amount of $5,000.

The lease between the parties, which was signed November 23, 1945, was for the term of one year commencing December 1, 1945, and rent was payable in advance in monthly installments of $150. The lease, which was on a standard form, was silent on the question of repairs, with the one exception that any made necessary by defendant's negligence were to be paid for by her. In September 1945 plaintiff had filed with the Rent Administrator, in accordance with regulations issued pursuant to the Emergency Rent Control Act, a schedule stating that the premises were not rented on January 1, 1941, the "freeze date," nor during the year 1940, and had first been rented January 1, 1944, at $150 per month. The same schedule described the condition of the premises as "fair" and did not list any services as included in the rent. Based upon these representations a rent ceiling of $150 a month was requested. On November 29, 1945, the Rent Administrator ordered that maximum rent be $100 per month. The order did not fix any minimum service standard.

After certain preliminary motions were disposed of plaintiff filed a reply, denying all allegations of the counter-claim and cross-claim and moving that such claims be dismissed. Before the trial date, defendant filed a motion for leave to amend the counterclaim and cross-claim. Among other grounds stated in the motion for leave to amend were "equitable defenses." The trial court denied defendant's motions and granted plaintiff's motion to strike the counterclaim and cross-claim.

The case then went to jury trial. Plaintiff introduced the lease in evidence and testified that prior to December 1, defendant had been a roomer in the house under another tenant; that on December 1 she took possession and at that time plaintiff demanded not the $150 rent called for by the lease but $100 as permitted by the Rent Administrator's order; that there had been some arguments with defendant about repairs, and she had not paid any rent. There were also received in evidence the application of plaintiff before the Rent Administrator for a rent ceiling and the order of the Administrator fixing the ceiling at $100 a month.

Plaintiff having closed his case, defendant's counsel then made an opening statement to the jury, saying among other things that plaintiff "made certain promises before and after November 23, 1945, in regard to the repairs and condition of the premises, also as to the amount of furnishings, as to the window shades and other furnishings" and that "in pursuance of those promises" defendant "signed this agreement and moved in on December 1, 1945, and on that date she actually tendered the sum of $150" to plaintiff "for the month of December." Counsel then stated he would prove that defendant herself had made certain specified repairs and purchased window shades and had lost income by reason of plaintiff's failure to repair.

Upon this opening statement of defendant's counsel, the trial court, on motion of plaintiff, directed a verdict for plaintiff and judgment accordingly was entered for possession of the premises and for three months' rent. From this judgment defendant appeals.

■ The test to be applied to a motion for a directed verdict at the conclusion of defendant's opening statement is the same as that applicable to a similar motion made by defendant at the close of plaintiff's opening statement. The latter rule, taken from Best v. District of Columbia, 291 U.S. 411, 54 S.Ct. 487, 78 L.Ed. 882, was quoted by us in Horne v. Ostmann, D.C. Mun.App., 35 A.2d 174, 175, as follows: " 'Plaintiff is entitled to the benefit of all inferences that may be drawn from his counsel's statement. To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness, but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists.' "

■ Applying that test here, we conclude that the trial court took the case from the jury prematurely. The opening statement of defendant's counsel was first to the effect that he was prepared to prove that plaintiff promised to repair the premises *after* signing the lease. It is an established rule that where by the terms of the lease the landlord does not have the obligation of repairing the premises, a promise to repair made by him during the term must be supported by new consideration to be valid; otherwise it is considered a nudum pactum.[1] This claim, therefore, did not constitute a good defense to plaintiff's cause of action.

Counsel, however, also stated that he was prepared to prove that similar representations and promises to repair and install equipment were made *before* the signing of the lease and that defendant executed the lease and moved into the premises pursuant to such promises. Plaintiff relied on the well-known general rule that parol evidence is inadmissible to contradict or vary the terms of a written instrument, and it was upon the basis of this rule that the trial court directed a verdict at the close of defendant's opening statement.

■■ If the alleged oral agreement did, in fact, contradict or vary the terms of the written instrument, evidence of the oral agreement was inadmissible, but the existence of a separate oral agreement as to any matter on which a written contract is silent, and which is not inconsistent with its terms, may be proved by parol, if under the circumstances of the particular case it may properly be inferred that the parties did not intend the writing to be a complete and final statement of the whole of the transaction between them.[2] The final test,

---

[1] See Fortner v. Moses, D.C.Mun.App., 49 A.2d 660, and cases there cited.

[2] Seitz v. Brewers' Refrigerating Machine Co., 141 U.S. 510, 12 S.Ct. 46, 35 L.Ed. 837; Hekimian v. Woodward, 46 App.D.C. 27; see also Raub v. Barbour,

in other words, would appear to be the intent of the parties; and the question as to what parties would ordinarily be expected to do under the circumstances is an important and often a controlling factor in determining the intent. "How closely bound to the contract is the supposed collateral agreement is the decisive factor in each case."[3]

In many of the reported cases, including *Seitz v. Brewers' Refrigerating Machine Co.*, supra, it has been held that when the writing itself upon its face is couched in such terms as to import a complete legal obligation, without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties and the extent and manner of the undertaking was reduced to writing, but those cases must be considered in the light of the facts involved. In all of the best reasoned cases on the subject the surrounding circumstances and the details of the contract involved have been considered in reaching a conclusion. Here defendant was cut off from detailing the surrounding circumstances under which the alleged oral agreement was made.

We believe the better practice is thus summarized by Wigmore:

"Whether a particular subject of negotiation is embodied by the writing *depends wholly upon the intent of the parties* thereto. In this respect the contrast is between voluntary integration and integration by law. Here the parties are not obliged to embody their transaction in a single document; yet they may, if they choose. Hence it becomes merely a question whether they have intended to do so.

"This intent must be sought where always intent must be sought, namely, in the *conduct* and *language* of the parties and the *surrounding circumstances*. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover. The question being whether certain subjects of negotiation were intended to be covered, we must compare the writing and the negotiations before we can determine whether they were in fact covered. Thus the apparent paradox is committed of receiving proof of certain negotiations in order to determine whether to exclude them; and this doubtless has sometimes seemed to lower the rule to a quibble. But the paradox is apparent only. The explanation is that these alleged negotiations are received only provisionally. Although in form the witnesses may be allowed to recite the facts, yet in truth the facts will be afterwards treated as immaterial and legally void, if the rule is held applicable. There is a preliminary question for the judge to decide as to the intent of the parties, and upon this he hears evidence on both sides; his decision here, *pro* or *con,* concerns merely this question preliminary to the ruling of law. If he decides that the transaction was covered by the writing, he does not decide that the excluded negotiations did not take place, but merely that *if* they did take place they are nevertheless legally immaterial. If he decides that the transaction was not intended to be covered by the writing, he does not decide that the negotiations did take place, but merely that *if* they did, they are legally effective, and he then leaves to the jury the determination of fact whether they did take place."[4]

Plaintiff urged, however, that even if evidence of a collateral oral agreement to repair were admissible, the violation of such agreement would not have constituted a defense to his action for possession and for a money judgment for rent. The trial court apparently sustained this view. Defendant relied upon two theories for urging the contrary position: first, that the failure to make the repairs as promised constituted an equitable defense to the action; and, second, that such failure constituted a vio-

---

6 Mackey 245; Graffam v. Pierce, 143 Mass. 386, 9 N.E. 819; Armstrong v. Cavanagh, 183 Iowa 140, 166 N.W. 673, 25 A.L.R. 784; Creek v. Lebo Inv. Co., 85 Colo. 357, 276 P. 329; Danielson v. Bank of Scandinavia, 201 Wis. 392, 230 N.W. 83, 70 A.L.R. 746; 22 C.J., Evidence, §§ 1233, 1715; 32 C.J.S., Evidence, §§ 792, 1013.

3 Mitchill v. Lath, 247 N.Y. 377, 160 N.E. 646, 647, 68 A.L.R. 239, re-argument denied 248 N.Y. 526, 162 N.E. 511.

4 9 Wigmore, Evidence, 3d Ed.1940, § 2430.

lation of the "minimum service standard" under the Rent Act. Defendant clearly was wrong in her latter contention. Under the Act, Code 1940, 45—1602, only three criteria for minimum service standards are permitted. If premises were rented on January 1, 1941, the service standard then in effect becomes the minimum service standard. If the premises were not rented on January 1, 1941, but were rented within the year ending on that date, the minimum service standard is that to which the tenant was last entitled during that year. If the premises were rented subsequent to January 1, 1941, then the minimum service standard is that generally prevailing for comparable housing accommodations "as determined by the Administrator." Here, no services from the landlord were required under any of these criteria.

 In all actions at law, however, equitable defenses may be interposed. Code 1940, 13—214. Furthermore, by statute in the District of Columbia mutual debts and claims under contract between the parties to a common law action may be set off against each other whether "the claims be for liquidated debts or unliquidated damages for breach of contract." Code 1940, 16—1901. Where such a claim of set-off is made "judgment shall be rendered for the balance found due, whether to the plaintiff or to the defendant, with costs." Code 1940, 16—1903.

That these principles apply to landlord and tenant actions in the Municipal Court is thoroughly established in this jurisdiction. Lalekos v. Manset, D.C.Mun.App., 47 A.2d 617; Geracy, Inc., v. Hoover, 77 U.S.App.D.C. 55, 133 F.2d 25, 147 A.L.R. 185; Smith v. O'Connor, 66 App.D.C. 367, 88 F.2d 749.[5]

Various procedural questions have been discussed by the parties on this appeal, but we believe none of them now require decision by us. We do suggest, however, that the retrial of the case will be facilitated by permitting defendant to amend in order to more clearly present his defense in accordance with the law as we have outlined it.

Reversed, with instructions to award a new trial.

---

[5] See also Block v. Wilson, D.C.Mun. App., 48 A.2d 461, petition for allowance of appeal denied U.S.App.D.C.; Holliday v. Pegram, 89 S.C. 73, 71 S.E. 357, Ann. Cas.1913A, 33.