George S. GIOTIS, t/a George's Delicatessen,
Appellant,

v.

Alfred K. LAMPKIN, Appellee.

No. 2171.

Municipal Court of Appeals for the
District of Columbia.

Reargued Oct. 13, 1958.

Decided Nov. 6, 1958.

Kurt Berlin, Washington, D. C., Donald Cefaratti, Jr., Washington, D. C., on the brief, for appellant.

James M. Coggs, Washington, D. C., for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellee, plaintiff in the trial court, filed a complaint against appellant which alleged a material breach of a written contract of sale of a business and fraud, and sought money damages in the amount of $3,000 and cancellation of a $3,200 note which represented the balance due on the purchase price. Appellant denied the allegations and counterclaimed for the balance due on the note. After a trial on the merits, the court, as the docket entry recites, awarded appellee a judgment of $800 on his claim and also judgment for him on appellant's counterclaim. The court also orally ordered cancellation of the note.

The chief contention raised by appellant on the original hearing of this appeal was that the judge erred in admitting and treating as legally operative parol evidence of an alleged oral covenant made by appellant not to engage in a competing business. After the original argument we ordered sua sponte a reargument on the question of whether the Municipal Court had jurisdiction of the action in view of the fact that the complaint sought $3,000 damages and cancellation of a $3,200 note. A majority of this court have concluded (1) that the claim actually asserted was within the court's monetary jurisdiction, and (2) that on the merits the trial judge committed no reversible error. We shall consider the second point first.

The circumstances leading up to the signing of the written contract were as follows: Appellant was the owner of a small delicatessen business located in the District of Columbia. Appellee was employed by the government and had no prior business experience. He became interested in procuring appellant's business. As a consequence he employed an attorney to represent him in the purchase. There is no indication in the record as to whether appellant had the benefit of counsel at the time the parties were negotiating the sale. A detailed five-page contract was drawn up and signed by the parties and by appellee's attorney as a witness. The agreement provided, among other things, for a down payment on the purchase price and the remainder to be paid in installments secured by a chattel deed of trust. It contained a complete inventory of the fixtures

and equipment; it provided for the payment of debts, the securing of the lease and various licenses, and a guarantee of gross income for a six-month trial period. Appellee was also required to obtain insurance and denied the right to assign the contract without appellant's consent.

Appellee testified, over objection, that appellant orally told him prior to the signing that he was going to Albania to visit his family, and promised that he would not again engage in business in the District. The written contract contains nothing on this subject, and there is no apparent explanation revealed by the record or suggested by counsel in their briefs here for the omission. Final settlement took place on November 1, 1955, and around January 1, 1956, appellant began operating substantially the same type of business about one block away. On May 1, 1956, appellee was forced to close.

The trial court admitted the parol evidence of the alleged oral covenant not to compete, held that appellant had breached the agreement, and granted appellee the relief sought.

The general rule is that when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements. There are three important exceptions to this principle: first, where a party has been induced by a fraudulent misrepresentation to enter the contract; second, the doctrine of "partial integration," i. e., where the parties have not *intended* that the written document cover all of their subjects of negotiation but only certain of them; third, the case of "collateral contract" in which the oral contract sought to be proved is separate from and independent of the written contract. Appellee urges in effect that parol evidence of the alleged oral covenant in this case was properly admitted under any of these three exceptions to the general rule. We shall consider each of these situations in order.

Initially, appellee contends that appellant's oral promise not to compete was fraudulent since not two months later he broke it, and that as a consequence the contract was voidable at his option. We cannot agree. "Fraud" sufficient to vitiate a contract is fraud in the narrow sense, i. e., a misrepresentation of a present or past fact. A mere promise to perform or not perform a future act, which is subsequently broken, is not embraced in the term as it is used here.[1] Assuming the truth of appellee's parol evidence here, still it disclosed nothing more than a promise not to compete in the future and thus could not constitute fraud. The evidence, then, was legally immaterial and could furnish no basis for rescission under a theory of fraud.

Secondly, appellee urges that the evidence was properly considered under either the theory of partial integration or collateral contract.[2] In Mitchell v. David, D.C.Mun.App.1947, 51 A.2d 375 this court endorsed the practice recommended by Wigmore to be followed in this type of case.[3] As pointed out there, the parol evidence is never excluded immediately, but comes in initially on a provisional basis. The true test to be followed in deciding whether the evidence shall finally be admitted is whether the parties *intended* that the writing embrace their agreement on the subject in question. If the court resolves that the parties did not have this intent, then the evidence is admitted.

1. 9 Wigmore on Evidence, § 2439(a), pp. 125–126 (3d ed. 1940).

2. These two exceptions are very similar in many respects, and the tests used to determine whether they apply in a given case are substantially identical. We will, therefore, treat them together.

3. 9 Wigmore on Evidence, § 2430, pp. 97, 98 (3d ed. 1940).

If the court holds that the writing was intended to cover the disputed negotiations, then the evidence, even if true, is legally immaterial and must be excluded.

■ The ultimate issue then concerns the intent of the parties. Intent is to be judged by an external standard; in Wigmore's words, it must be sought "in the *conduct and language* of the parties and the *surrounding circumstances.*" [4] The precise criteria bearing on this question are as numerous and as varied as the cases themselves, and are not easily susceptible of generalization.[5] Nevertheless, certain standards usually recur: (1) the appearance and nature of the writing itself, i. e., whether it is comprehensive or merely devoted to a few of the possible subjects of negotiation; (2) the relative positions and experience of the parties themselves; (3) assistance of counsel in the preparation of the document; (4) whether the contract contains any expression at all on the subject involved. In this last connection, a large number of cases, which have been concerned with the problem in the instant case, have held that when "good will" is expressly conveyed in the writing, as was done here, this term includes the same subject matter as a covenant not to compete, and thus that the parol evidence should be excluded.[6]

■ In the present case the court orally stated that appellant "did not act in good faith when he entered into business within the short period of time so near the location that he had sold," and also found that the statements made by him were an essential inducement of the written contract. Considering the entire evidence in this case, we cannot say that this finding is clearly erroneous.

■ The jurisdictional problem involved here is fully and accurately presented in the dissenting opinion, but we cannot agree with the conclusion reached there that this case is distinguishable from the case of Whelan v. Hirshon, 1956, 98 U.S.App.D.C. 82, 232 F.2d 339, which reversed our decision in Hirshon v. Whelan, D.C.Mun.App.1955, 113 A.2d 484, 486. We believe that a close reading of the record in this case in conjunction with the various opinions and the record, of which we may take judicial notice, in the Whelan case will disclose that all of the elements, factors, and considerations which contributed to the holding in Whelan are present here in one way or another. Consequently, we are bound to hold that the claim asserted here, as in Whelan, was one on a rescission and not for rescission, and thus that the Municipal Court had jurisdiction.

Other errors alleged are without merit.

Affirmed.

HOOD, Associate Judge (dissenting).

The complaint in this case asked for $3,000 damages and cancellation of a $3,200 note. (The note was originally $3,500, but plaintiff had made six $50 payments on it.) Viewing the complaint alone it would appear that it asked relief beyond the jurisdiction of the Municipal Court because Code, § 11–755(a) limits the civil jurisdiction of that court to actions "in which the claimed value of personal property or the debt or damages claimed" does not exceed $3,000. However, neither party raised the jurisdictional question in the trial court or here, and it was first raised by us after the appeal had been argued and submitted on the merits. We then ordered reargument solely on the jurisdictional question. We must consider this question in the light of Whelan v. Hirshon, 98 U.S.App.D.C. 82, 232 F.2d 339. In that case the complaint asked $2,990 damages and rescission of a $15,000 contract; the trial court ruled that the

4. Id.

5. See the annotation, 70 A.L.R. 752.

6. Annotation, 11 A.L.R.2d 1227, 1253–59.

contract be rescinded and that the complainant recover $2,990; and judgment for that amount was entered. In reversing this court,[1] the United States Court of Appeals ruled that the action was within the jurisdictional limits of the Municipal Court. On the surface it would appear that if the Muncipal Court had jurisdiction in that case, it necessarily had jurisdiction in the present case. Although the two cases have some similar features, I believe there are material differences.

One point of similarity is that in both cases the jurisdictional question was first raised in this court after argument on the merits. Some emphasis was placed on this point in the Whelan case, but I do not understand that case to hold that jurisdiction of subject-matter can be conferred on a court by a failure to object. I understand the holding to be that when the question is first raised after trial and judgment, such question is to be viewed "in the light of the evidence and proceedings." In the Whelan case it was pointed out that the complaint was ambiguous in that although it prayed for rescission, it "alleged facts indicating that plaintiff had already exercised his claimed right to rescind by offering to return the property to defendant if the defendant would return plaintiff to his status quo." There is no such allegation in the complaint in this case. There is an allegation that some six months after purchasing the business plaintiff accused defendant of breaching the contract "and made demand upon defendant for return of all money paid to defendant," which demand was refused, but there is no allegation of any offer to return the property to defendant. It was also pointed out in the Whelan case that although the trial court made a finding that the contract was rescinded the judgment itself contained no such adjudication. In the present case the trial court concluded its oral decision by announcing: "The final judgment, Mr. Clerk, is finding for the plaintiff in the sum of $800 against the defendant and cancellation of the note." Although the judgment thereafter entered purported to be only a money judgment for plaintiff for $800, there is in the record before us the note endorsed by the Clerk as "Canceled by trial finding." Thus the court went further in this case than in the Whelan case, for its finding that the note should be cancelled was put into effect.

Examining the evidence and proceedings at trial, it appears from the record that at the commencement of the trial plaintiff "was requested to state his theory of the case since it was not readily apparent from the complaint as to whether the suit was to rescind or affirm the contract"; and the plaintiff stated "that his suit was for rescission." This, I take it, meant what it said, namely, that the suit was one for rescission and not one upon a rescission. And nowhere in plaintiff's testimony is it shown that he ever attempted to rescind. He continued to operate the store until business so fell off that he was "forced to close." And it is significant that plaintiff continued to make payments on the note until the month in which he closed the business. One who had exercised a claimed right of rescission of a contract would hardly continue making payments on the contract. The only possible evidence of an attempt to rescind is defendant's admission on cross-examination of receiving a letter from plaintiff notifying him of plaintiff's "desire to return the business to defendant under the terms of the contract." I see nothing in the evidence which would justify the conclusion that plaintiff had rescinded the contract prior to bringing his suit; and no such claim was made during the course of the trial and the trial court did not find that such had occurred.

If plaintiff is not to be held to his statement in open court that his suit was one for rescission, then the nature of his suit at least should be determined by the relief he sought. In Weigel v. Cook, 237 N.Y.

1. See our opinion on rehearing in 113 A.2d 484, 486.

136, 142 N.E. 444, 446, cited in the Whelan case, the following language was quoted from Vail v. Reynolds, 118 N.Y. 297, 302, 23 N.E. 301, 303:

"A person who has been induced by fraudulent representations to become the purchaser of property, has upon discovery of the fraud three remedies open to him, either of which he may elect. He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract. * * * He may bring an action in equity to rescind the contract and in that action have full relief. (Allerton v. Allerton, 50 N.Y. 670). Such an action is not founded upon a rescission, but is maintained for a rescission, and it is sufficient therefore for the plaintiff to offer in his complaint to return what he has received and make tender of it on the trial. Lastly, he may retain what he has received and bring an action at law to recover the damages sustained."

It is clear that plaintiff here did not follow the first of the above-stated remedies because he asked not only for the return of the consideration parted with ($1,800 representing the down payment of $1,500 and the $300 paid on the note) but also for an additional sum of $1,200, denominated as punitive damages, plus cancellation of the note. Neither did he follow the last stated remedy, for to have done so he would have been compelled to affirm the contract, including the note. Obviously he sought the second remedy, that is, to rescind and to have full relief.

Finally, if we leave aside the complaint and the trial proceedings and look only to the relief granted, we find plaintiff receiving a judgment for $800 and obtaining cancellation of his note then in the amount of $2,670. (In addition to plaintiff's payments, defendant had credited $530 on the note, the net proceeds of the foreclosure sale.) The aggregate of these two sums exceeded the jurisdictional limitation of the trial court.

My conclusion is that whether we look at the case from the viewpoint of the complaint, the evidence and proceedings, or the relief granted, it is one beyond the jurisdiction of the court, and the case should be remanded with instructions to vacate the judgment and dismiss for lack of jurisdiction. Such a result would no doubt appear harsh to appellee, but the jurisdictional limitation placed on the trial court by Congress must be observed and enforced in the trial court and in this court despite any resulting hardship in a particular case.

With respect to the merits of the appeal, the majority hold there was no basis for rescission under a theory of fraud. That being so, there is no basis for holding that the action can be sustained either as one on a rescission or one for a rescission. Apparently the majority sustain the judgment as one for damages for breach of covenant not to compete, but the case was neither tried nor decided on that theory.