Eugene W. STANDLEY, Appellant.

v.

Charles F. D. EGBERT, Appellee.

No. 5148.

District of Columbia Court of Appeals.

Argued April 13, 1970.

Decided June 22, 1970.

---

4. United States v. Tucker, 380 F.2d 206, 208 n. 1 (2d Cir. 1967).

5. See id.

Leonard Joseph Keilp, Washington, D. C., for appellant.

Paul M. Rhodes, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and KELLY and NEBEKER, Associate Judges.

NEBEKER, Associate Judge.

This is an appeal from a judgment against appellant Standley on his complaint seeking return of architectural fees advanced to appellee Egbert. The written contract was terminated due to the inability of the architect to design the desired home within the orally agreed cost limitations. The appeal is also from a partial award of Egbert's counterclaim for additional compensation. The trial court, impressed "by the complete credibility of both parties", placed fault on the breakdown of the lines of communication between the parties, demonstrated by the failure of the architect to keep in touch with the owner through the various phases of design and development required under Article 3 of the contract. Nevertheless, the court rejected Standley's complaint and found Egbert was entitled to the value of the architectural services he had rendered up to the date of termination. We disagree.

The testimony reveals that Standley met with Egbert on October 12, 1967, at which time the features desired in the home were discussed and, in addition, a $30,000 to $34,000 cost ceiling was agreed upon. Two days later, Egbert delivered an American Institute of Architects standard form contract to Standley, which he signed. Therein, Egbert agreed to provide professional services for the project at the agreed-upon fee of $3,000, but there was no construction cost limitation in the written contract. Standley was to tender this fee at the rate of 5 percent (Article 8.1.1) of this basic compensation for services upon execution of the agreement. Under the provisions of Article 8.1.2, subsequent payments were to be made monthly in proportion to the performance of the required service such that they increased the compensation to the following percentages at the completion of each phase of the work:

| | |
|---|---|
| Schematic Design Phase | 15% |
| Design Development Phase | 35% |
| Construction Document Phase | 75% |
| Receipt of Bids | 80% |
| Construction Phase | 100% |

In return for the tendered consideration, Egbert was obligated under Article 3 to complete a detailed list of services. Article 3.1 first called for the architect to perform services listed in the Schematic Design Phase:

3.1.1 The Architect shall consult with the Owner to ascertain the requirements of the Project and shall confirm such requirements to the Owner.

3.1.2 He shall prepare schematic design studies leading to a recommended solution together with a general description of the Project for approval by the Owner.

3.1.3 He shall submit to the Owner a Statement of Probable Project Construction Cost based on current area, volume or other unit costs.

Article 6 detailed the various alternative methods by which these costs could be estimated.

■ Appellant contends that the first obligation of Egbert called for in the written contract was an agreement on the requirements of the home and that parol evidence is admissible to prove the terms and conditions of that agreement. We agree. Parol evidence is excluded only when the "parties *have made a contract and have expressed it in a writing to which they have both assented as the complete and accurrate integration of that contract. * * *"* Murray v. Lichtman, 119 U.S. App.D.C. 250, 252, 339 F.2d 749, 751 (1964). (Footnote omitted; emphasis added.) *See also* Brewood v. Cook, 92 U.S.App.D.C. 386, 388–389, 207 F.2d 439, 441–442 (1953); O'Hanlon v. Grubb, 38 App.D.C. 251, 256 (1912). This determination *"depends wholly upon the intent of the parties"* and must be ascertained from the written contract, the conduct and language of the parties and the surrounding circumstances. Mitchell v. David, D.C.Mun.App., 51 A.2d 375, 378 (1947). *See also* Luther Williams, Jr., Inc. v. Johnson, D.C.App., 229 A.2d 163, 165 (1967); Giotis v. Lampkin, D.C. Mun.App., 145 A.2d 779, 782 (1958).

■ An examination of the written contract does not reveal any cost limitations placed upon the construction of the home to which the architect agreed to adhere in designing it. But by the express terms of the contract under Article 3.1.1, Egbert was obligated to solicit the home requirements from the owner. Thus by the very terms of the written contract an agreemnt was intended that fell outside that document. Indeed, without instructions as to the desired style of the home, dimensions, number of rooms, quality and quantity of building materials among other things, the architect would not be complying with the terms of the contract. *Cf.* Spitz v. Brickhouse, 3 Ill.App.2d 536, 123 N.E.2d 117

(1954). The evidence also conclusively establishes from the testimony of both parties that Standley and Egbert agreed that the total construction costs of the house should not exceed $30,000 to $34,000. We hold that such oral agreements were contemplated by Article 3.1.1 of the written contract and that the parties are bound by these terms.

■ Once agreeing to these requirements the written contract called for submission of schematic designs and a general description of the home with accompanying cost estimates. These documents had to be accepted before Egbert was obligated to proceed further.[1] Acceptance of the schematic designs then entitled Egbert to receipt of an additional 10% of the fee, making a total of 15% for work completed under that phase (Article 8.1.2, *supra*). Egbert, in further performance of his obligations, tendered a schematic design a week later which contained 2,500 square feet of living space. This was not accompanied by a required cost statement, and was, in any event, rejected because the house plan was much too large for the lot. Standley testified that this schematic design was resubmitted about the end of October. It contained approximately 1,700 square feet of space. It was never accepted for the work on these drawings was not completed. Instead of waiting for first phase acceptance, Egbert submitted drawings representing the second phase of development, again without cost data. Request for the data was made and when tendered it totaled approximately $42,000. It and other documents later submitted were immediately rejected as they exceeded the agreed cost limitation.

Egbert then offered to redraft the entire plan, as contemplated in Article 6.5.[2] No agreement was reached for it entailed com-

1. Footnote 3, *infra*.

2. Article 6.5 provides:
   If the Statement of Probable Project Construction Cost, or the Semi-Detailed or Detailed Cost Estimate, or the lowest bona fide proposal is in excess of any limit stated herein, the Owner shall give written approval of an increase in the limit, or he shall cooperate in revising the project scope or quality, or both, to reduce the cost as required.

plete abandonment of the desired floor plan. Standley then terminated the contract after seven days' written notice, as provided in Article 10. That Article further stated: "* * * In the event of termination, due to the fault of others than the Architect, the Architect shall be paid for services performed to termination date. * * *" The trial court implicitly found no fault and awarded Egbert additional compensation of $396 for the entire time spent on the project, bringing the total to be paid to $1,896. We disagree with this award.

Article 3.1.2, *supra,* called for the acceptance of the schematic design by Standley. No further work could be performed by Egbert, for the second phase, Design Development Phase, was to be prepared "from the approved Schematic Design Studies".[3] It was the fault of Egbert for drafting additional plans from unapproved schematic designs. This work is not subject to compensation under the express terms of the termination clause. The only other theory of recovery, *quantum meruit,* is not applicable when compensation of the parties is covered by an express written contract. Leba v. Sills, D.C.Mun. App., 175 A.2d 599, 600 (1961).

There is no fault to be attributed to Egbert for his inability to prepare an acceptable schematic design within the cost limits. As he testified, the additional requirements desired by Standley could not be incorporated in the home without placing some of the bedrooms in the basement. This plan was unacceptable to Standley and precipitated final termination. We hold that Egbert is entitled to compensation for these services not to exceed $450 as called for by the contract. Since he was paid $1,500 and awarded part of his counterclaim we reverse the judgment of the trial

court and remand with instructions to award judgment to Standley in the amount of $1,050—the difference between the $1,500 paid and the 15% owed under the Schematic Design Phase ($450).

Reversed with instructions.

---

3. Article 3.2.1 states:

The Architect shall prepare from the approved Schematic Design Studies, the Design Development Documents consisting of plans, elevations and other drawings, and outline specifications, to fix and illustrate the size and character of the entire Project in its essentials as to kinds of materials, type of structure, mechanical and electrical systems and such other work as may be required.