Zlatan STAMENICH, et al., Appellants,

v.

Mirjana MARKOVIC, et al., Appellees.

No. 81–1194.

District of Columbia Court of Appeals.

Submitted Sept. 16, 1982.

Decided June 13, 1983.

Elbert R. Shore, Rockville, Md., was on brief for appellants.

Donald Cefaratti, Jr., Washington, D.C., was on brief for appellees.

Before NEBEKER, BELSON and TERRY, Associate Judges.

TERRY, Associate Judge:

The trial court granted appellees' motion for a preliminary injunction and entered an order directing appellants to assign a lease to appellees. We hold that the trial court erred in two respects and reverse the order granting the injunction.[1]

I

On September 7, 1979, appellant Zlatan Stamenich entered into a contract with appellee Alexander Markovic for the sale of Mr. Stamenich's thirty shares of stock in Serbian Crown, Inc., the corporate owner of the Serbian Crown Restaurant in Northwest Washington, for $175,000.[2] On Sep-

---

1. Because appellants focus their challenge on that portion of the trial court's order which directed them to assign the lease, we consider the correctness of the order only as to that issue.

2. The contract also provided that "[t]he closing will take place as soon as the necessary immigration papers are obtained for Mrs. Mirjana Markovic [the wife of Alexander Markovic] permitting her lawful immigration with her family into the United States." In their motion for a preliminary injunction, appellees asked the court to order appellant Stamenich "to take the appropriate and necessary action to gain permanent residence for Mirjana Markovic." At the hearing below, Stamenich acknowledged that he had agreed to cooperate with Mr. Markovic to help bring his wife into the United States from Canada, where she was then residing. For reasons not clear from the record, however, Mr. Stamenich apparently discontinued his efforts. Appellees eventually withdrew the immigration issue from the case, their counsel conceding that the court "could not

tember 29 and December 14 they executed addenda to the September 7 agreement. Specifically, the December 14 addendum provided that the purchase price "include[d] also one-half (40 shares) of the corporation FRENCH DELICATESSEN—JOUR ET NUIT, INC., owned by the seller Mr. Zlatan Stamenich."

On January 24, 1980, Stamenich and Alexander Markovic signed a document entitled "Final Settlement." This document stated that there was a balance of $92,159 to be paid on the purchase price of the stock and specified the mode of payment. It also provided that half the shares of the Serbian Crown and the French Delicatessen were to be transferred that day to appellee Mirjana Markovic.[3] There was no provision in either the September 7 contract, the two addenda, or the January 24 "Final Settlement" for any assignment of the lease to the premises where the restaurant was located.

On March 11, 1980, Mr. Markovic entered into a contract with appellant Renato Bertagna for the purchase of Mr. Bertagna's interest in the Serbian Crown (twenty shares of stock) and the French Delicatessen (forty shares of stock) for the sum of $140,000. The record is not entirely clear, but it appears that Mr. Bertagna delivered all of the stock to Mr. Markovic when he was tendered the full purchase price.

On June 17, 1981, appellees filed a motion for a preliminary injunction asking the court, *inter alia,* to enter an order directing Stamenich and Bertagna to assign the lease to them.[4] At the hearing which followed, the trial court expressed some concern at the outset over the fact that there was no verified complaint or affidavit in support of the motion. Upon reassurances from all the parties that they were ready to proceed, however, the court went ahead with the taking of testimony.[5]

Mr. Markovic testified that before he signed the September 7 contract, he had entered into verbal agreements with appellant Stamenich concerning the assignment of the lease to the property. Mr. Stamenich, on the other hand, testified that Mr. Markovic had never asked him to include a provision in the contract to cover the assignment of the lease. Stamenich added, however, that despite the absence of any contractual provision, he was willing to assign the lease as soon as he was paid in full for his shares of stock in the two corporations.

Branko M. Peselj, an attorney who represented both Markovic and Stamenich during the contract negotiations, testified that "[e]verything was specified in the contract." Some of his other testimony, however, was inconsistent with this assertion. For exam-

direct Mr. Stamenich to process the government papers . . . ."

3. On December 14, 1979, Mr. Markovic had assigned his interest in the contract to his wife, Mirjana Markovic. He also signed the "Final Settlement" in the name of his wife.

4. The lease had been executed by Stamenich and Bertagna in their individual capacities, not as officers or agents of either corporation.

5. During the course of his testimony Mr. Markovic stated that he had read the complaint and that the facts it recited were true to the best of his knowledge.

Appellants contend that the trial court erred when it continued to hold the hearing after it ascertained that there was neither a verified complaint nor an affidavit in support of appellees' motion for a preliminary injunction. Ap-

pellants' argument is premised on a misunderstanding of the pertinent sections of Super.Ct. Civ.R. 65 dealing with preliminary injunctions and temporary restraining orders.

Super.Ct.Civ.R. 65(a)(1), which addresses the notice requirements with respect to preliminary injunctions, provides in part: "No preliminary injunction shall be issued without notice to the adverse party." Subsection (b) of the same rule, which deals with temporary restraining orders, provides that before issuing such an order in a case in which neither oral nor written notice has been given to the adverse party, immediate and irreparable injury must appear "from specific facts shown by affidavit or by the verified complaint . . . ." The motion before the trial court in this case was for a preliminary injunction, not a temporary restraining order. Because appellants had actual notice of the hearing, and because notice is all that is required, the rule was satisfied.

ple, when asked why no provision had been made in the contract for assignment of the lease, Mr. Peselj replied, "[B]ecause it was understanding [*sic*] that he [Mr. Markovic] would take over everything, including the lease."

Benjamin Chaplin, the chief investigator for the District of Columbia Office of Alcoholic Beverage Control, testified that before his office would issue a liquor license, the party requesting it had to have a lease to the premises for which the license was sought. Mr. Chaplin added, however, that if the applicant did not have a lease, a license would still be issued if "there was a letter of intent from the landlord, stating that he would issue the lease after settlement." The license for the premises involved in the instant case had been issued to French Delicatessen—Jour et Nuit, Inc.

At the conclusion of the hearing, the trial court orally ruled that the lease would have to be assigned to the appellees and asked their counsel to prepare an order to that effect. On August 12, 1981, the court filed written findings of fact and conclusions of law, stating that "[e]ither implicitly or expressly ... [appellants] agreed to have the lease assigned to Jour et Nuit ...." Concluding that appellants had breached their agreement, the court ordered them to "execute an assignment of the lease to French Delicatessen—Jour et Nuit, Inc., within 24 hours of the presentation of an assignment of the lease to them by [appellees' attorney] ...."[6]

## II

Appellants' attack on the trial court's ruling is twofold. First, they contend that the trial court erred when it permitted appellees to introduce parol evidence to establish the existence of an alleged agreement to assign the lease for the building in which the restaurant was located. Second, even assuming *arguendo* that the use of parol

evidence was proper, appellants maintain that the trial court erred in granting appellees' motion for a preliminary injunction because the requirements for obtaining this form of equitable relief were not met. We agree with both contentions.

In general, "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as legally inoperative parol evidence of the prior negotiations and oral agreements." *Giotis v. Lampkin,* 145 A.2d 779, 781 (D.C.Mun.App.1958); *accord, Carr v. Haynes,* 374 A.2d 868, 870 (D.C.App. 1977). More precisely, "[e]xtrinsic or parol evidence which tends to contradict, vary, add to, or subtract from the terms of [the] written contract must be excluded." *Fistere, Inc. v. Helz,* 226 A.2d 578, 580 (D.C. App.1967) (citations omitted); *see Dixon v. Wilson,* 192 A.2d 289, 291 (D.C.App.1963). Like most rules, however, the parol evidence rule has its exceptions. For example, when fraud, mistake, or duress is alleged, the admission of parol evidence to vary the express terms of a contract may be proper. *See Rice v. Rice,* 415 A.2d 1378, 1382 (D.C. App.1980); *Giotis v. Lampkin, supra,* 145 A.2d at 781. Parol evidence may also be admitted to explain ambiguous language in a contract, *Dixon v. Wilson, supra,* 192 A.2d at 291, or to show "a contemporaneous agreement in addition to and not inconsistent with or a variation of the written agreement between the same parties, which was an essential inducement of the written contract, or where the parties did not adopt the writing as a statement of their whole agreement." *Boomhower, Inc. v. Lavine,* 151 F.Supp. 563, 567 (D.D.C.1957) (citation omitted). Appellees did not allege fraud or any form of improper inducement to enter into the contract. We must therefore determine whether the written contract was in any way ambiguous or incomplete so as

---

6. On January 22, 1982, the trial court found appellants guilty of contempt for their failure to comply with the August 12 order. The contempt order has been stayed pending the outcome of this appeal.

to render admissible the challenged parol evidence.[7]

Whether the written contract in this case represented a complete integration of the understanding between the parties depends on their intent at the time of the execution of the contract. *Mitchell v. David,* 51 A.2d 375, 378 (D.C.Mun.App. 1947). The litmus test for measuring intent requires that we look to "the written contract, the conduct and language of the parties and the surrounding circumstances." *Standley v. Egbert,* 267 A.2d 365, 367 (D.C. App.1970) (citations omitted).

"Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." *Friedman v. Thomas J. Fisher & Co.,* 88 A.2d 321, 323 (D.C.Mun.App.1952), quoted in *Scrimgeour v. Magazine,* 429 A.2d 187, 189 (D.C.App.1981); *see Dixon v. Wilson, supra,* 192 A.2d at 291. Although inartfully drawn, the contract in the instant case was not ambiguous. It was comprehensive as to the subjects it discussed, namely, the sale of stock in the two corporations and the immigration of Mrs. Markovic (see note 2, *supra*). Viewing the contract as a whole, the circumstances surrounding its execution, and the comparative experience of all concerned, we are satisfied that the written contract embodied the complete agreement between the parties. In particular, we deem it significant that the original written

contract was modified on three occasions as a result of continuing negotiations.[8] Had the parties intended to include a provision regarding the lease, it would have been a simple matter for them to draw up another addendum. Their failure to do so makes clear that an assignment of the lease was not within the scope of the contract. We therefore hold that the trial court erred in admitting parol evidence of the alleged oral agreement to assign the lease.[9]

## III

But even assuming *arguendo* that appellees had been able to establish by proper proof the existence of the oral agreement, the trial court's decision to issue the preliminary injunction did not have an adequate foundation in the evidence. Accordingly, it cannot stand.

The decision to grant or deny preliminary injunctive relief is committed to the sound discretion of the trial court. *In re Antioch University,* 418 A.2d 105, 109 (D.C.App.1980); *District Unemployment Compensation Board v. Security Storage Co.,* 365 A.2d 785, 786–787 (D.C.1976), *cert. denied,* 431 U.S. 939, 97 S.Ct. 2651, 53 L.Ed.2d 256 (1977). This court has made clear, however, that "[a] proper exercise of discretion requires the trial court to consider whether the moving party has clearly

7. Although "a written contract may be conditioned on an oral agreement that the contract shall not become binding until some condition precedent resting in parol shall have been performed," *Luther Williams, Jr., Inc. v. Johnson,* 229 A.2d 163, 164 (D.C.App.1967) (citations omitted); *accord, Washington Tent & Awning Co. v. 818 Ranch, Inc.,* 248 A.2d 126, 127 (D.C. App.1968), appellees have made no such contention with respect to the oral agreement to assign the lease.

8. We are troubled by the fact that the same attorney represented both parties in the contract negotiations. However, it appears that the attorney's involvement in the negotiating process was minimal, and that the parties themselves reached an agreement and then looked to the attorney to prepare the written document embodying that agreement. Hence, while the attorney had a potential conflict of

interest, it evidently did not develop into an actual conflict, at least as far as we can determine from the record.

9. From the record we are unable to ascertain the duration of the alleged lease. We note that had the term remaining on the lease been in excess of one year, any oral agreement to assign it would have been in violation of the statute of frauds and thus unenforceable. *Union Travel Associates, Inc. v. International Associates, Inc.,* 401 A.2d 105, 107 (D.C.App. 1979); *Amberger & Wohlfarth, Inc. v. District of Columbia,* 300 A.2d 460, 463 (D.C.App.1973); *see* D.C.Code §§ 28–3501, 45–306 (1981). Even assuming that this was the case, however, this possible defense was lost because it was not affirmatively pleaded. *Hackney v. Morelite Construction, D.C. Corp.,* 418 A.2d 1062, 1066 (D.C.App.1980) (citations omitted); *see* Super. Ct.Civ.R. 8(c).

demonstrated (1) that there is a substantial likelihood he will prevail on the merits; (2) that he is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to him from the denial of the injunction than will result to the defendant from its grant; and, in appropriate cases, (4) that the public interest will not be disserved by the issuance of the requested order." *Wieck v. Sterenbuch,* 350 A.2d 384, 387 (D.C.App.1976) (footnote omitted); *accord, e.g., Ballard & Associates, Inc. v. Mangum,* 368 A.2d 548, 553 (D.C. App.1977).

■ When reviewing the exercise of discretion by the trial court in granting or denying a preliminary injunction we are not called upon "to resolve the merits of the underlying dispute between the litigants." *Don't Tear It Down, Inc. v. District of Columbia,* 395 A.2d 388, 390 (D.C.App.1978) (citation omitted). Instead, we must "(1) [examine] the trial court's findings and conclusions to see if they are sufficiently supported by the record; (2) [assure] that the trial court's analysis reflects a resolution of all the issues which necessarily underlie the issuance of [the] injunction; and (3) [inquire] into any other claim of an abuse of discretion by the trial court." *Wieck v. Sterenbuch, supra,* 350 A.2d at 387, quoted in *Don't Tear It Down, Inc. v. District of Columbia, supra,* 395 A.2d at 390–391; *accord, Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Ass'n,* 385 A.2d 20, 23 (D.C.App.1978).

■ In a court's determination of whether to issue a preliminary injunction, "the most important inquiry is that concerning irreparable injury." *Wieck v. Sterenbuch, supra,* 350 A.2d at 387; *Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Ass'n, supra,* 385 A.2d at 23. It is impossible to discern just what the irreparable injury may have been in this case.

The trial court's findings of fact and conclusions of law are totally silent on the point. The only argument which can be inferred from the record is that without the lease to the building in which the restaurant is located, appellees could not retain the liquor license which they apparently needed to serve liquor in their restaurant and would thus lose some customers. The problem with this argument, however, is that Mr. Chaplin testified that the Office of Alcoholic Beverage Control would issue a liquor license to an establishment even though the applicant was not the lessee of the premises so long as there was a letter of intent from the landlord indicating that the lease would be issued at a later time. Appellees thus had a means of obtaining the license without prior assignment of the lease. On the evidence before it, the court could not reasonably have found a likelihood of irreparable injury. We therefore hold that the trial court erred in granting appellees' motion for a preliminary injunction.

*Reversed.*[10]

---

**10.** We also note that the trial court's findings of fact and conclusions of law make no reference to the four factors which must be considered before ruling on a motion for a preliminary injunction. Thus, even if we had found no

other basis for reversal, we would have had to set aside the injunction and remand this case for further proceedings. *See Small v. Kiley,* 567 F.2d 163 (2d Cir.1977).