**UNITED STATES of America, Plaintiff,**

v.

**SEARS, ROEBUCK AND CO., Defendant.**

**Civ. A. No. 83–3679.**

United States District Court, District of Columbia.

Aug. 10, 1984.

Charles L. Schlumberger, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff.

Owen Goldbloom, Maureen E. Mahoney, Latham, Watkins & Hills, Washington, D.C., for defendant.

MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

This case is before the Court on cross motions for summary judgment. At the hearing held on this matter the Court issued a bench ruling granting defendant's motion for summary judgment. This opinion supplements the bench ruling.

The principal question presented in this case is whether Sears should be credited with interest for the period between May 9, 1980 and August 8, 1983 for $5.4 million it paid November 21, 1978 on an assessment for dumping TV receivers imported from Japan on the American market. The dispute arises out of a settlement contract finalized on April 28, 1980. Under the settlement terms, Sears agreed to pay the United States Departments of Commerce, Treasury and Customs Service a total of $19.8 million, $5.4 million of which was to be paid out of a refund Sears was to have received from the government for the 1978 payment. On May 9, 1980, a federal court enjoined the implementation of the settlement agreement. On November 6, 1980,

Roderick M. Hills, counsel for Sears, wrote a letter to Lynn J. Barden, Assistant General Counsel for Import Administration of the Department of Commerce, confirming a phone conversation he had had with Barden. According to the letter, Hills and Barden agreed that the amount Sears owed the Department of Commerce was to be reduced by the amount of interest which had accrued between May 9, 1980, and the date the injunction was to be lifted. Barden consulted Homer Moyer, the General Counsel of the Department of Commerce, and countersigned the Hills' letter on November 7, 1980.

In its motion for summary judgment, the United States contends that the April 1980 settlement agreement determines Sears' liability and that the parol evidence rule requires the exclusion of whatever prior or side agreements Sears claims to have been made between the parties. In its cross-motion for summary judgment, Sears presents several arguments to justify the extension of interest credit on the $5.4 million payment. Significantly, Sears contends that notwithstanding an integration clause the April 1980 agreement was only partially integrated. A collateral term to the agreement was allegedly the interest formula set out in a draft of the agreement. The formula was to be used to determine the amount by which interest was to accrue during the injunction period on the $5.4 million payment. In the alternative, Sears contends that the November 1980 letter represents an effective modification of the April 1980 agreement permitting the accural of interest until the termination of the injunction.

*The Law*

1. The April, 1980 Settlement Agreement and the Parol Evidence Rule

■ Under the parol evidence rule, "when the parties to a contract have reduced their entire agreement to writing, the court will disregard and treat as inoperative parol evidence of the prior negotiations and oral agreements." *Giotis v. Lampkin,* 145 A.2d 779, 781 (D.C.1958). There are, however, exceptions to the parol evidence rule. For example, when the parties have not intended that the written document cover all of the subjects of negotiation or when there is a "collateral contract" in which the oral contract sought to be proved is separate from and independent of the written contract, the court may consider parol evidence. *Id.* Furthermore, when there is ambiguity in the language of the agreement, parol evidence may be admitted to clarify the intent of the parties. *Dixon v. Wilson,* 192 A.2d 289, 291 (D.C.1963).

While it is presumed that all of the terms of an agreement are embodied in a contract, the court must examine the intent of the parties to determine whether the contract represents a complete integration of the understanding of the parties. *Stamenich v. Markovic,* 462 A.2d 452, 456 (D.C. 1983); *Luther Williams, Jr., Inc. v. Johnson,* 229 A.2d 163, 165 (D.C.1967). In measuring intent, the court looks to "the written contract, and the conduct and language of the parties and the surrounding circumstances." *Standley v. Egbert,* 267 A.2d 365, 367 (D.C.1970) (citations omitted). Courts focus on a number of factors, including whether the contract appears to be comprehensive or simply devoted to a few issues and whether attorneys aided in the preparation of the document. *Giotis v. Lampkin, supra,* 145 A.2d 782. The presence of an integration clause strengthens the presumption that the written contract is the repository of the agreement between the parties. *Luther Williams, Jr., Inc. v. Johnson, supra,* 229 A.2d at 165.

Examining the settlement agreement and the circumstances surrounding its execution, the Court concludes that it is a fully integrated contract. The contract itself is comprehensive. It provides for the terms and conditions of payment and stipulates what is to occur in the event that the agreement is subject to litigation. Paragraph 10 of the agreement is an integration clause which states that the agreement "represents the entire understanding and agreement between the Company ... and the United States ... and supersedes any prior negotiation, letter or understanding

relating to the subject matter hereof." (Settlement Agreement of April 28, 1980, Brief in Support of Plaintiff's Motion for Summary Judgment, Exh. A at 11.) In addition, the parties were fully represented by counsel. Sears' ability to negotiate a reduction for the interest which had accrued between 1978 and the April 1980 settlement date indicates that the representation was effective.[1] All of these factors support the conclusion that the settlement agreement was fully integrated.

Turning to the issue of whether the contract is ambiguous, it is well settled that in the absence of ambiguity the meaning of the contract is to be determined from the face of the contract "without resort to parol evidence or extrinsic circumstances." *Appalachian Power Co. v. Federal Power Commission*, 529 F.2d 342, 347–48 (D.C. Cir.1976) (footnote omitted) (*quoting Simpson Bros. Inc. v. District of Columbia*, 179 F.2d 430, 434 (D.C.Cir.1949), *cert. denied*, 338 U.S. 911, 70 S.Ct. 350, 94 L.Ed. 561 (1950) ). A contract is not ambiguous "simply because the parties disagree on its interpretation." *Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1034 (D.C. Cir.1973), citing *Dixon v. Wilson, supra*, 192 A.2d at 291. The standard used by American courts for determining ambiguity in a contract is " 'reasonably susceptible of different constructions or interpretations.' " *Lee v. Flintkote Co.*, 593 F.2d 1275, 1282 (D.C.Cir.1979) (*quoting 1901 Wyoming Coop. Ass'n v. Lee*, 345 A.2d 456, 461 n. 7 (D.C.1975) ). *See Papago Tribal Utility Authority v. Federal Energy Regulatory Commission*, 723 F.2d 950, 955 (D.C.Cir.1983).

Examining the April 1980 agreement, it is manifest that it is unambiguous on its face. The terms of settlement are clear. Paragraph 2 of the agreement states that Sears owed a total of $19.8 million, with $14.3 million payable within 15 days of the contract, and the remainder, $5.4 million, was payable within 10 days of the receipt of the refund of the $5.4 million Sears paid in November 1978. There is no oblique reference to additional terms or conditions for the payment.

Sears contends that the lack of clarity of paragraph 7 of the agreement renders paragraph 2 ambiguous. Paragraph 7 of the contract states:

> To the extent that this agreement is the subject of litigation contesting its validity during the pendency of which litigation of entries which are subject to this agreement are enjoined, *the time limits for payments in paragraph 2 will be tolled, with continued accumulation of interest on any unpaid balance pending a final judicial decision.* (Emphasis added.)

(Settlement Agreement of April 28, 1980, Br. in Support of Pl. Motion for S.J., Exh. A at 10.) It is not clear from the wording of this clause whether the time limits alone will toll or whether the accumulation of interest on any unpaid balance will also toll. This lack of clarity, however, does not have implications for Sears' contention that paragraph 2 of the agreement provides for the accumulation of interest on the $5.4 million payment after the settlement date of August 28, 1980. Thus, there is no ambiguity calling for the examination of extrinsic evidence to interpret the contract.

Even when the Court examines such extrinsic evidence as the November 1980 letter, there is no basis for imparting ambiguity into the contract. In that letter, the discussion of the tolling of the interest due and date for payment is distinct from the discussion of the accrual of interest on the $5.4 million payment. The issues are not tied together. Since the agreement was fully integrated and unambiguous with respect to an injunction period interest credit, the Court declines to consider parol evidence.

---

1. While a written contract, even one containing an integration clause, "may be conditioned on an oral agreement that the contract shall not become binding until some condition precedent resting in parol shall have been performed," *Luther Williams, Jr., Inc. v. Johnson, supra*, 229 A.2d at 164, there is no showing that the parties had agreed to stay the execution of the contract pending the termination of an injunction.

### 2. The Effect of the November 1980 Letter on the Settlement Agreement

■ The November 1980 letter written by Hills to Barden states that "the amount to be paid the Department of Commerce under the Agreement [is to be] further reduced by the amount of interest ... which has accrued on the $5,447,419.76 payment between May 9, 1980, and the date the injunction is lifted." (The Hills Letter, Supplement to Defendant's Cross-Motion for Summary Judgment, Exh. # 2, Attach. C.) Sears contends that the November 1980 letter serves as an effective modification of the April 1980 contract. The government counters that Barden and Moyer did not have the authority to bind the government to this new agreement and that even if they did the next contract fails for lack of consideration.

The Court concludes that the November 1980 letter effectively granted Sears an injunction period interest credit on the $5.4 million 1978 payment for the period from May 9, 1980 to August 8, 1983 for the reason that either the November 1980 letter represents an agreed upon interpretation of the settlement agreement, or in the alternative, the letter represents a modification of the April 1980 settlement agreement.

Moyer clearly had the authority to bind the government to the terms in the November letter. In an announcement published in the Federal Register in May 1980, Secretary of Commerce Klutznick states that he retains the authority to decide the compromise of claims under T.D. 71–76. 45 Fed. Reg. 29623 (May 5, 1980). In paragraph 3 of that announcement, Klutznick authorizes the counsel of the Department of Commerce "to take any actions necessary to implement any decision by [him] on the compromise of claims under T.D. 71–76, including the signing and execution of any settlement documents and making any corrections or changes that may be necessary therein." *Id.* It is clear from the language of the announcement that once the Secretary had made the decision to settle with the importers, the General Counsel (Moyer in this case) is responsible for ensuring the implementation of the terms of the agreement. The exercise of this broad authority by Moyer is well documented in materials submitted by defendant. (*See* Deposition of Homer Moyer in *Zenith Radio Corp. v. United States,* Suppl. to Def. Cross Motion for S.J., Exh. # 17, at 546; Declaration of Homer Moyer, Suppl. to Def. Cross Motion for S.J., Exh. # 16, at ¶ 3.)

Barden's responsibility as Acting General Counsel for Import Administration entailed his participation in negotiations leading to the settlement of agreements. He also resolved questions concerning the interpretation of the language of the settlement agreements. (Declaration of Lynn Barden in *Zenith Radio Corp. v. United States,* Suppl. to Def. Cross Motion, Exh. # 13, at ¶ 1.) Acting in that capacity in this case, Barden interpreted or modified the terms of the agreement between Sears and the government with respect to the amount owed by Sears. Barden had the authority in his own right to interpret the terms of the agreement. And, under the authority granted to him by Moyer, Barden had the power to modify the terms of the agreement.

In finding that the November 1980 letter was an interpretation of the April 1980 contract, the Court concludes that the April agreement provides for an interest credit on the $5.4 million assessed in 1978 for the period between November 21, 1978 and April 28, 1980, the date of the written settlement agreement. (Declaration of Homer Moyer, Plaintiff's Reply, Attach. F, at ¶ 3.) The purpose of this interest credit was to place Sears in the same position as other settling importers. *Id.* Upon receiving the November 1980 letter, Barden consulted with Moyer, who confirmed Barden's interpretation that the interest credit for the injunction period was consistent with the rationale for the presettlement interest credit provided for in the settlement agreement between Sears and the government. (Declaration of Lynn J. Barden, Plaintiff's Reply, Attach. D, at ¶ 5.) Acting in his

capacity as an interpreter, Barden read the language of ¶ 2 of the settlement agreement to extend the accrual of interest on the $5.4 million payment through the injunction period. There is no need to determine whether or not Sears provided consideration, for under this approach no consideration is required.

Under a modification of contract approach, however, a prior contract is effectively modified only if the new agreement satisfies all of the essential elements of a valid contract including consideration. *Nyhus v. Travel Management Corp.*, 466 F.2d 440, 445–46 (D.C.Cir.1972). Contract law provides that forbearance from the exercise of the rights of one of the parties and the receipt of benefits by the other party function as consideration. *See Mel Dar Corporation v. Commissioner of Internal Revenue*, 309 F.2d 525, 531 (9th Cir.1962), *cert. denied*, 372 U.S. 941, 83 S.Ct. 933, 9 L.Ed.2d 967 (1963); *Nyhus v. Travel Management Corp., supra*, 466 F.2d at 446 (dicta). Here, Sears requested an extension of the interest credit. Moyer accepted Hills' proposal and had Barden countersign the November 1980 letter. Sears' consideration was its forbearance to repudiate the agreement in light of the continuing injunction and the treatment of the other importers. The effect of the collapse of the agreement would have been to divert government resources from enforcing the existing agreements to defending past actions. (*See* Appellee's Motion to Dissolve Injunction Pending Appeal, *The Committee to Preserve American Color Television v. G. William Miller* (Appellee), C.A. No. 17–1948, at 46.) Clearly, then, the government benefited from the modification extending the interest credit through the injunction period.

Based on either the interpretation or modification theory, Sears is not liable for the $2.8 million the government claims Sears owes. In addition, Sears tendered the total amount owed under the agreement before the August 8, 1983 due date, so it is not liable for interest which accrued between that date and December 9, 1983, when the government accepted the checks previously tendered by Sears. Since this opinion disposes of the controversy, there is no need to address the related issues developed by the parties.

*Conclusion*

Accordingly, for the reasons stated in this Opinion and upon consideration of the cross motions for summary judgment, the oppositions thereto and the entire record herein, and in accordance with the Court's bench ruling, it is by the Court this 6th day of August, 1984,

ORDERED that plaintiff's motion for summary judgment is hereby denied with respect to all counts; and it is

FURTHER ORDERED that defendant's motion for summary judgment is hereby granted; and it is

FURTHER ORDERED that judgment is hereby entered for the defendant.